## WRIGHT *v.* JACOBS, et al.

No. 40216 October 1, 1956 89 So. 2d 708

642.

*Wm. F. Riley, Joseph E. Brown,* Natchez, for appellant.

*Carl A. Chadwick,* Natchez; *Jackson & Ross,* Jackson, for appellees.

Etheridge, J.

This is a suit for personal injuries received by appellant, John W. Wright, complainant below, when his auto-

mobile collided with a parked tractor (or truck) and trailer of the individual defendants, doing business as Tom Hicks Transfer Company, appellees. The suit has been revived in the name of the executrix of John C. Jacobs, one of the defendants. The collision occurred on the Louisiana side of the Mississippi River bridge between Vidalia, Louisiana, and Natchez, Mississippi. The case originated by an attachment in chancery against the non-residents, defendants-appellees. Defendants filed a cross bill seeking a recovery for damages to their truck resulting from complainant's alleged negligence. After the hearing, the chancery court dismissed with prejudice both the bill of complaint and the cross bill. Defendants have not taken a cross-appeal from the dismissal of their cross bill. Appellant contends that the chancery court was manifestly wrong in finding that defendants were not guilty of negligence which proximately contributed to appellant's injuries, and in finding that appellant was contributorily negligent, which under Louisiana law would bar his recovery.

■■■ The law of Louisiana, the place where the collision occurred, determines the substantive law. Assuming defendants were negligent, still if complainant were negligent and his negligence contrbiuted to his injury, except in exceptional circumstances hereinafter referred to, he would have no right of recovery from defendants. On the other hand, the procedural and evidential law of Mississippi is applicable to the trial of the case, and to the weight of a determination of facts by the chancery court. 11 Am. Jur., Conflict of Laws, Sections 203-204; Welch v. Kroger Grocery Co., 180 Miss. 89, 177 So. 41 (1937); Southern Railway Company v. Buse, 187 Miss. 752, 193 So. 918 (1939); I. C. R. R. Company v. Perkins, 79 So. 2d 459 (Miss. 1955).

There was considerable conflict between the testimony of complainant and his witness Nicholson on the one hand, and on the other, the testimony of appellees' witnesses,

Walter Floyd, the colored driver of the truck, W. O. White, the night watchman for appellees who was following the truck when the motor stopped, the Louisiana state policeman, the city marshal of Vidalia, and Bradley, the terminal manager for appellees. We have concluded that the chancellor was amply warranted in finding that appellees were not negligent. That necessitated the dismissal of appellant's bill of complaint. A summary of the testimony to support the decision of the trial court is as follows:

In the early morning of September 27, 1954, Floyd, a truck driver for appellees, was driving their tractor and trailer from Deer Park, Louisiana, to the Natchez terminal of appellees' trucking company. He was followed in a station wagon by W. O. White, an employee of defendants. All of the lights of the truck were burning. Floyd drove east up the western side of the Mississippi River bridge around 5 A. M., when the motor of the truck sputtered and quit running. The truck stopped about half way up the incline on the bridge, near the overhead metal framework, and was between two of the many lights which illuminate the bridge at night. Floyd switched over to the other gasoline tank but the motor would not start. White pulled in front of the stalled truck and parked. White and Floyd put out three kerosene light flares, one behind the truck down the bridge toward Vidalia, one to the front of the truck, both of which were between 60 to 150 feet to the rear and to the front of the truck, and one flare on the north or lefthand side of the stalled truck. Floyd cut the headlights off and put on his parking lights. There were numerous lights burning on the truck and on the trailer. Two parking lights were burning on each side of the hood, and on the front of the cab were three yellow clearance lights. On the back of the cab of the truck, a red stop light about six inches in diameter with the letters "STOP" was burning. The trailer had yellow clearance lights on each side. On the

back of the trailer were four red lights. After putting out the flares and seeing that they and the lights were burning, White drove on to Natchez to get more gasoline. He and Floyd thought the truck was out of gas, although it later developed that it contained over thirty gallons. Apparently a gas line was stopped up.

Floyd remained outside the truck. The bridge was brightly lighted, with many lights strung on that structure, almost to a daylight intensity. Floyd was standing at the front bumper when he heard complainant approaching from the Louisiana side going east toward the bridge. Wright was driving between 45 to 60 miles an hour. The bridge was visible to complainant for at least 500 yards. Complainant's car continued at a fast speed up the incline to the truck, and knocked over the pot flare at its rear. Complainant then attempted to cut to the left to avoid the truck. The right front side of his car hit the two left rear tandem wheels of the trailer, and knocked them under the trailer about 18 inches. The tractor and trailer weigh 32,620 pounds. The rear of complainant's car was turned to the north side of the bridge when the car stopped. A passing motorist took him to the hospital. It was a clear night on the bridge, although there was fog in the surrounding bottom land. Occasional wisps of fog arose through the bridge, but no fog was obstructing vision at the time of the collision. Daybreak was just beginning when the truck stopped half-way up the incline of the bridge. The accident occurred about 10 to 15 minutes after that.

Appellant's version, which the trial court manifestly did not accept, was that he was driving up the incline of the bridge at a speed of about 25 miles an hour, when he met an automobile coming toward him. He dimmed his lights to pass, then went through a slight mist or fog, and immediately after the car passed him going west, he came up to the truck. The truck had no lights on it and no flares were placed out to the rear, side or front. De-

fendants' witness Floyd contradicted this version. He further said that he was standing outside the truck when the collision occurred, and that he did not see any car pass going west just before the wreck.

The chancellor found that the bridge was lighted from one end to the other "almost as bright as the middle of the day"; and that complainant had "every opportunity to see almost anything in his path while going across the bridge at night." In effect, he found that defendants were not negligent, and complainant was negligent.

 █ The chancery court was amply warranted in finding that defendants were not negligent under the recited circumstances. In view of that decision, it is apparent that appellant was not keeping a proper lookout and was driving at a speed which was unreasonable under the circumstances, and that these factors were the causes of the collision. Certainly the trial court was justified in so holding. This decision appears to be in full accord with the substantive law of Louisiana. Safety Tire Service, Inc. v. Murov, 140 So. 879 (La. App. 1932); Odom v. Long, 26 So. 2d 709 (La. Spp. 1946); Hemel v. U. S. F. & G. Company, 31 So. 2d 38 (La. App. 1947); Jones v. Burke, 51 So. 2d 322 (La. App. 1951). Under these cases, complainant could not recover even if defendants had been negligent, where complainant was guilty of negligence which was a contributing cause of the accident.

 █ Appellant undertakes to bring this case under the doctrine of Gaiennie v. Cooperative Produce Co., Inc., 196 La. 417, 199 So. 377 (1940), and succeeding decisions applying that case. There the court said that the failure of the driver of a moving vehicle to keep a reasonable lookout and to observe obstructions on the highway, such as a parked truck, ordinarily constitutes such negligence as will prevent a recovery by such driver, but the application of this rule is dependent upon the circumstances of each particular case, and where exceptional

circumstances exist, contributory negligence of the driver of the moving vehicle will not necessarily bar him from recovery. Among such exceptional circumstances to be considered are those where the stalled vehicle has no lights on it, or lights which are dirty and difficult to see, and where plaintiff in his car has his vision obstructed by the lights of an oncoming vehicle going in the opposite direction.

Appellant contends here that this is such an exceptional case within the Gaiennie doctrine, that defendants' truck was muddy and dirty, and of a drab color, its lights were dirty and did not properly reflect, assuming that they were lighted, that defendants' trailer was enveloped in an intermittent fog, that appellant had just passed an oncoming car, and that the flares, if they were out, were placed at a distance of less than the 100 feet required by the Louisiana Revised Statutes of 1950, Section 32:441. One fallacy with this position on appeal is that the trial court found against appellant on these asserted facts, and there was ample evidence to support such finding. But the principal objection is that the trial court found that defendants were not guilty of any negligence. So for both of these reasons, appellant cannot bring his case within the exceptional-circumstances doctrine of the Gaiennie case.

Nor is there any merit in appellant's attempt to invoke the last clear chance doctrine, which places its emphasis upon the time sequence of events, and holds the defendant liable, if, immediately prior to the harm, he has the superior opportunity to avoid it. The evidence does not support application of this rule, and the trial court necessarily found against invoking it. For a clear discussion of this rule and that of contributory negligence, see Prosser, Law of Torts (2d Ed. 1955), Sections 51-52.

Affirmed.

*McGehee, C. J.,* and *Kyle, Arrington* and *Gillespie, JJ.,* concur.