211 So.2d 509 (1968)
Judy Ann MITCHELL, Administratrix of the Estate of Hugo Mitchell, Deceased
v.
Mrs. Inell CRAFT, Administratrix of the Estate of L.W. Jackson, Deceased.
No. 44895.
Supreme Court of Mississippi.
June 10, 1968.
*510 Dudley W. Conner, Hattiesburg, for appellant.
R.L. Willett, E.R. Alley, Laurel, Williams & Williams, Picayune, for appellee.
ETHRIDGE, Chief Justice.
This suit was brought in the Circuit Court of Pearl River County by appellee, Mrs. Inell Craft, administratrix of the estate of L.W. Jackson, deceased, for his wrongful death in an automobile accident which occurred in Louisiana. The defendant-appellant is Judy Ann Mitchell, administratrix of the estate of Hugo Mitchell, deceased, who was killed in the same two-car collision. Mitchell filed a counterclaim. The circuit court gave peremptory instructions for plaintiff against defendant on liability and for cross-defendant on the counterclaim of Mitchell. The jury returned a verdict of $12,000, and from a judgment based thereon this appeal has been taken.
This case involves a choice-of-law or conflict-of-law problem in an action for wrongful death resulting from an automobile accident, in which plaintiff's decedent and defendant's decedent were in separate cars. Both decedents were domiciled in Mississippi, their estates are being administered here, and whatever expectations they might have had were centered in Mississippi. This State has a comparative negligence statute and Louisiana has the common-law rule by which contributory negligence bars recovery. We modify the previously existing rule in this jurisdiction, which applied invariably the law of the place of injury, and hold that under the factual situation existing in this case, the most substantial relationships of the parties and the dominant interest of the forum require application of Mississippi law, in accordance with the principles summarized in the Restatement (Second) Conflict of Laws sections 175, 145, 164 and 6 (Proposed Official Draft, Adopted May 24, 1968).
Since the circuit court erroneously gave a peremptory instruction to plaintiff on defendant's liability, and on cross-defendant's nonliability, the case is reversed and remanded for a new trial.

I.
All of the parties to the collision were resident citizens of Mississippi. L.W. Jackson, the plaintiff's decedent, was a resident of Laurel, Mississippi. For the past week he had been working as a roustabout for an oil company on an island in the mouth of the Mississippi River, out from Harvey, Louisiana. He worked on a twelve-hour shift for a week, and then was off a week, which enabled him to go home on alternate weeks. Jackson had been divorced from his wife for several years. They had three children, who were living with their mother in Pennsylvania. Jackson had been living at his sister's residence in Laurel, which she said had been his headquarters and home for a long time. She understood that he was coming home when the accident occurred. Toxey Slade, who worked for the same company as Jackson and was with him at the time of the accident, was from Lamar County, Mississippi.
The defendant-appellant's decedent, Hugo Mitchell, driver of the other car, was a resident citizen of Picayune, Mississippi, which is eight miles north of the scene of the accident. He was thirty years of age and married. On the night he was killed he had taken his wife and child to a circus, apparently in Picayune. The other occupant of Hugo's car was his brother, Mackie Gene Mitchell, twenty-three years of age.
The accident occurred in Louisiana around 12:45 a.m., March 6, 1965, on Interstate Highway 59, about two miles south of the Mississippi line. It was a dark night and the weather was cold and dry. L.W. Jackson, accompanied by Toxey Slade, was driving his 1954 Dodge north toward the Mississippi line. Highway 59 has two northbound traffic lanes which are paved with concrete and are each about twelve feet wide. On each side of the two *511 northbound lanes is an asphalt service shoulder approximately eight to ten feet wide. The southbound traffic lanes are separated from those northbound by a neutral ground and a gully.
Driving north in the right-hand traffic lane, Jackson's 1954 Dodge came to a stop when the driveshaft came loose from the transmission. Slade, the only surviving eyewitness, said that they coasted about 250 feet before the car stopped in the right traffic lane. Jackson opened the door and stated that he could fix it "in a minute." He squatted down and then rolled beneath the car and started working with the transmission. At Jackson's request that Slade get him "a little light under here," Slade got out of the car and walked around to the driver's side with a cigarette lighter, but had not ignited it. The headlights and the left taillight were burning. (Slade did not know whether the right one was on or not.) Slade said that he became aware of an oncoming northbound vehicle about three-fourths of a mile down the highway, which was straight and level. Apparently he assumed that the oncoming vehicle, the Mitchell car, would pass them in the left traffic lane. Suddenly he became aware that the Mitchell car was not in the other lane, and seeing it headed for the stalled Jackson car, Slade jumped as far as he could into the left lane and ran across it. He estimated that the Mitchell car was traveling sixty-five to seventy miles per hour. The first things which attracted his attention were the headlights directly behind him and the squeal of brakes.
Hugo Mitchell was driving his 1964 Chevrolet sedan, with his brother, Mackie Gene, sitting next to him. The Mitchell car skidded about forty feet before its impact with the stalled Jackson vehicle and thereafter several car lengths. When it collided with the rear of the Jackson car, both burst into flames. Jackson and Hugo and Mackie Gene Mitchell were killed.
Slade said that he told Jackson that he should push the car off of the traveled portion of the highway, but Jackson replied that it would take only a minute to fix it. Slade did not inform Jackson of the approaching car; he apparently thought it would move into the left lane. A Louisiana state trooper, who arrived sometime after the accident, stated that the asphalt shoulder was sufficiently wide for a car to park on and not be in danger of traffic. It was also wide enough for a following car to drive upon and avoid a stalled vehicle in the right lane. The left traffic lane would also have been available, if Slade had not been running across it at the time.
Plaintiff, Jackson's administratrix, charged that the proximate cause of the accident was Mitchell's excessive speed, failure to keep a lookout and his car under control, and failure to pass the Jackson car in the passing lane. The defendant, administratrix of Mitchell's estate, filed a counterclaim for damages against the plaintiff, administratrix of Jackson's estate, charging that Jackson was guilty of negligence causing the accident in stopping his car so that it obstructed the east lane of northbound traffic, when Jackson had sufficient time and opportunity to move his car off of that lane onto the shoulder, and in failing to display signal lights sufficient to warn approaching traffic.
At the close of the trial, the circuit court gave a peremptory instruction for the cross-defendant on the counterclaim filed by Mitchell. It apparently concluded that Jackson was not guilty of any actionable negligence proximately contributing to the accident.
The circuit court also gave a peremptory instruction for plaintiff, administratrix of Jackson's estate, on Mitchell's liability, and submitted the question of damages to the jury. The trial court refused thirteen instructions requested by the defendant which were based on the substantive law of Louisiana. Several of them stated that Jackson's contributory negligence, if any, proximately contributing to the accident would bar plaintiff's suit. The jury returned a verdict for plaintiff for $12,000 and a judgment was entered against Mitchell *512 for that sum and for the cross-defendant on the Mitchell counterclaim. Defendant's motion for a judgment notwithstanding the verdict or for a new trial, which was overruled, asserted among other grounds that the court erred in refusing "to apply the Louisiana law for a cause of action which arose in Louisiana." This was overruled.
Appellant argues that the trial court erred in applying the substantive law of Mississippi to a motor vehicle collision that occurred in Louisiana. Louisiana substantive law, she asserts, should apply, and in that State contributory negligence bars recovery. Appellee contends that both Mitchell and Jackson, as well as their guest passengers, who are not involved in this suit, were resident citizens of Mississippi; that both decedent drivers were traveling to their respective homes in Mississippi at the time of the collision; and that under the center-of-gravity or most substantial relationship rule, the substantive law of Mississippi is applicable, since the place of accident was purely fortuitous, and the interest of Mississippi in both decedents, their estates, and their expectations of their rights under Mississippi law, including its comparative negligence statute, is dominant.

II.
We are concerned here with two wrongful death actions, involving Mississippi residents and their Mississippi estates, and arising from a two-car collision which occurred in the State of Louisiana. The Mississippi administratrix of the estate of one of the decedents sued, in a Mississippi court, the Mississippi administratrix of the estate of the other decedent, who in turn filed a counterclaim against the plaintiff. Both parties alleged negligence by the other's decedent, and that such negligence was a contributing cause of the respective deaths. The question is, which state's law is applicable  Mississippi or Louisiana?
We will assume that a case is to be governed by the law of the forum unless it is expressly shown that a different law applies, and in case of doubt, a court will naturally prefer the laws of its own state. Moreover, a forum state will not favor application of a rule of law repugnant to its own purposes, and forum law should presumptively apply unless it appears that non-forum contacts are of greater significance. Craig v. Columbus Compress & Warehouse Co., No. 44,910, 210 So.2d 645. (Miss. May 20, 1968); Gatenby v. Altoona Aviation Corp., 259 F. Supp. 573 (W.D.Pa. 1966); Wilcox v. Wilcox, 26 Wis.2d 617, 133 N.W.2d 408 (1965); Gorman v Murphy Diesel Co., 3 Terry 149, 42 Del. 149, 29 A.2d 145 (1942); Ehrenzweig, Conflict of Laws §§ 103-05, 108 (1962); Ehrenzweig, A Counter-Revolution in Conflicts Law? From Beale to Cavers, 80 Harv.L.Rev. 377, 400 (1966).
The traditional rule, that the governing law is the law of the place where the injury occurred, has been discarded as a rule of invariable application in recent years by most of the courts which have examined it.[1] It requires disregarding the *513 facts in many cases and the governmental interests of the forum state. Unless the judicial function is abdicated, it should not be an unvarying guide to choice-of-law or conflict-of-law decisions in all tort cases. The only merits of that mechanical doctrine are certainty and predictability. Thus in many cases it bears little relationship to any relevant considerations for choosing one law against another in a particular tort case. The facts of the instant case illustrate this observation. Louisiana's sole relationship with the occurrence is the purely adventitious circumstance that the collision happened there. On the other hand, both of the decedents were Mississippi residents, their estates are being administered in Mississippi, and their representatives are both seeking damages in a Mississippi court.
Mississippi has had a comparative negligence statute since 1910. The fact that an injured person may have been guilty of contributory negligence does not bar his recovery, but the jury may diminish damages in proportion to the amount of negligence attributable to him. Miss. Code 1942 Ann. §§ 1454, 1455 (1956). Comparative negligence represents a long-established, salutary and worthwhile policy of this State.[2]
On the other hand, Louisiana retains the common-law doctrine of contributory negligence, although the harsh results of its strict application have been ameliorated to some extent through the use of the concept of proximate cause. See Lewis v. Brogdon, 208 So.2d 761 (Miss. 1968) (discussing Louisiana cases). Under Louisiana law, it is probable that both Jackson and Mitchell would be found guilty of such negligence as would preclude recovery of damages by either of their representatives. Under Mississippi's comparative negligence statute, questions of negligence and contributory negligence are for the jury. The fact that both Jackson and Mitchell might have been negligent would not bar a recovery by one against the other. The jury could diminish damages proportionately to the amount of negligence attributable to each.
The only virtue of invariably applying the rule of the place of the injury is that it is easy for a court to apply. Nevertheless, in many cases, such as the present one, it bears no relation to any rational criteria for choosing one law as against another in a tort-conflicts case. The pertinent factors in a conflict-of-law or choice-of-law case have been considered by many scholars, such as Cheatham, Reese, Ehrenzweig, Currie, Leflar, Traynor and Cavers.[3] State and federal courts have *514 analyzed and applied these choice-influencing considerations in numerous tort-conflicts decisions. In a major contribution in this field, Robert Leflar has synthesized and analyzed five principal, choice-influencing considerations. Leflar, Choice-Influencing Considerations in Conflicts Law, 41 N.Y.U.L.Rev. 267 (1966); Leflar, Conflicts Law: More on Choice-Influencing Considerations, 54 Calif.L.Rev. 1584 (1966).
One consideration is predictability of result, which relates principally to consensual transactions. In the sense of serving as a guide to the conduct of the parties in the instant case, it is completely irrelevant, since predictability, with reference to rules of liability, is not a factor considered by people prior to their being involved in an accidental automobile collision. With respect to the factor of maintenance of interstate order, neither state will be affected here by what the other state does, and interstate automobile movement will not be hindered. This Court can select the applicable law without harming any interest of another state, and should not apply the law of a state which does not have a substantial connection with the total facts and the particular issue being litigated.
As to simplification of the judicial task, apart from the fact that under the Louisiana contributory negligence rule it would probably not be necessary to try this case at all, the Mississippi rules are simple and easy to apply.
A primary consideration in determining applicable law is the advancement of the forum's governmental interests. Mississippi's interests in the present controversy are evident, while Louisiana has none. The parties were residents of Mississippi, and no citizen of Louisiana is involved. If there is any recovery on a new trial, it will be by a Mississippi plaintiff-administratrix or a defendant-administratrix as counter-claimant, acting as officers of a Mississippi court for the benefit of Mississippi citizens. This state is especially concerned with the protection of its injured domiciliaries and their families, and the distribution of its domiciliaries' estates. The law selected and applied in this case will determine the effect of the contributory fault, if any, of plaintiff's and counter-claimant's decedents. It will determine whether this negligence, if any, will preclude plaintiff or counterclaimant from recovery. It is this Court's duty to further this State's governmental interests. The comparative negligence statute of this State has been effectively administered for many years and we have an interest in applying it to Mississippi residents.
Finally, an important consideration is application of the better rule of law. We believe in our own law in this instance. Comparative negligence, although utilized in diverse ways in only seven states, is a fairer and more economically equitable standard of liability than that of the common-law rule of contributory negligence.
This analysis leads quite definitely, we think, to the application of the substantive law of Mississippi in this case. These relevant choice-of-law or conflict-of-law considerations are factual, realistic, and can be tested by a qualitative process of evalution.
In Browning v. Shackelford, 196 So.2d 365 (Miss. 1967), while the question of the application of the most substantial relationship rule was not directly presented, both the controlling and concurring opinions indicated a willingness to examine the validity of the rule in tort-conflicts cases.
Craig v. Columbus Compress & Warehouse Company, No. 44,910, 210 So.2d 645. (Miss. May 20, 1968), determined the law applicable to cotton warehouse receipts. It was held that Mississippi law was applicable for two reasons: The general rule favored application of the law where the property was located; and the most substantial relationships to the events, parties and property were in the forum state. *515 With regard to the second point, the Court observed:
In recent years there is a trend in some state and federal courts to adopt the "center of gravity doctrine." This doctrine is a rule whereby the court trying the action applies the law of the place which has the most significant relationship to the event and parties, or which, because of the relationship or contact with the event and parties, has the greatest concern with the specific issues with respect to the liabilities and rights of the parties to the litigation. 15A C.J.S. Conflict of Laws § 8(2) (1967).
In the instant case, all of the interested parties are within the borders of Mississippi. The warehouse receipts are Mississippi contracts. The theft of these receipts occurred within this state. The property was stored in Mississippi. The cotton was released under Mississippi law on duplicate receipts. The cotton was grown, harvested and baled in Mississippi. In fact, everything with reference to the transaction occurred within this state, except the sale of stolen warehouse receipts [which occurred in Tennessee].
Moreover, in other areas of conflicts law this Court has examined choice-influencing considerations and the most significant relationships of the occurrence and the parties in order to determine the choice of applicable law. Burnham Van Service, Inc. v. Dependents of Moore, 250 Miss. 165, 164 So.2d 733 (1964) (workmen's compensation); Mandle v. Kelly, 229 Miss. 327, 90 So.2d 645, 92 So.2d 246 (1956) (workmen's compensation); see Crawley, Conflict of Laws in Mississippi as to Contracts, 14 Miss.L.J. 240 (1942).
The Restatement (Second) Conflict of Laws (Proposed Official Draft, Adopted May 24, 1968) summarizes the rules which we think are applicable to this case:
§ 175. Right of Action for Death.
In an action for wrongful death, the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship to the occurrence and the parties, in which event the local law of the other state will be applied. (emphasis added).
§ 145. The General Principle.
(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, as to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,
(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
(d) the place where the relationship, if any, between the parties is centered.
These contacts are to be evaluated according to their relative importance with respect to the particular issue.
§ 164. Contributory Fault.
(1) The law selected by application of the rule of § 145 [the same as § 175] determines whether contributory fault on the part of the plaintiff precludes his recovery in whole or in part.
(2) The applicable law will usually be the local law of the state where the injury occurred.

*516 § 6. Choice of Law Principles.
(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.
The above conflict-of-law or choice-of-law rules which we adopt require only a modification and not an overruling of earlier cases applying the law of the state where the injury occurred. Ordinarily, the local law of the state where the injury occurred will determine the rights and liabilities of the parties, "unless with respect to the particular issue, some other state has a more significant relationship to the occurrence and the parties, in which event the local law of the other state will be applied." To the extent, if any, that earlier tort-conflicts cases from this jurisdiction do not consider the most substantial relationships of the occurrence and the parties in the light of the considerations and rules outlined above, they are accordingly modified. See, e.g., New Orleans & N.E.R.R. Co. v. Scogin, 243 Miss. 1, 137 So.2d 539 (1962); Wright v. Jacobs, 228 Miss. 641, 89 So.2d 708 (1956); Covington v. Carley, 197 Miss. 535, 19 So.2d 817 (1944); Montgomery & Atlanta Motor Freight Lines, Inc. v. Morris, 193 Miss. 211, 7 So.2d 826, suggestion of error overruled, 193 Miss. 223, 8 So.2d 502, (1942); Welsh v. Kroger Grocery Co., 180 Miss. 89, 177 So. 41 (1937).

III.
In summary, the rights and liabilities of the parties should be determined by the law of Mississippi, which has the most substantial relationship to the parties, rather than the law of Louisiana, where the injury occurred. The circuit court correctly undertook to try the case under Mississippi law, but erroneously applied it. It erred in granting plaintiff-appellee, administratix of Jackson's estate, a peremptory instruction on liability against defendant-appellant, administratrix of Mitchell's estate. It also committed error in granting appellee, administratrix of Jackson's estate, a peremptory instruction relieving her of liability on the counterclaim of appellant, administratrix of Mitchell's estate. Issues of liability and damages on both the declaration and the counterclaim, as to the estates of both parties, should have been submitted to the jury under the comparative negligence statute. The jury may also be appropriately instructed under the counterclaim statute. Miss.Code 1942 Ann. § 1483.5 (1956). Hence the judgment of the circuit court is reversed, and this cause is remanded for a new trial.
Reversed and remanded.
All Justices concur.
NOTES
[1] Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953); Tramontana v. S.A. Empresa De Viacao Aerea Rio Grandense, 121 U.S.App.D.C. 338, 350 F.2d 468 (1965), cert. denied, 383 U.S. 943, 86 S.Ct. 1195, 16 L.Ed.2d 206 (1966); Reich v. Purcell, 63 Cal. Rptr. 31, 432 P.2d 727 (Sup.Ct. 1967); Emery v. Emery, 45 Cal.2d 421, 289 P.2d 218 (1955); Wessling v. Paris, 417 S.W.2d 259 (Ky. 1967); Schmidt v. Driscoll Hotel, Inc., 249 Minn. 376, 82 N.W.2d 365 (1957); Clark v. Clark, 107 N.H. 351, 222 A.2d 205 (1966); Wilson v. Faull, 27 N.J. 105, 141 A.2d 768 (1958); Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279, 95 A.L.R. 2d 1 (1963); Casey v. Manson Constr. & Eng'r Co., 428 P.2d 898 (Or. 1967); Griffith v. United Air Lines, Inc., 416 Pa. 1, 203 A.2d 796 (1964); Wilcox v. Wilcox, 26 Wis.2d 617, 133 N.W.2d 408 (1965); Heath v. Zellmer, 35 Wis.2d 578, 151 N.W.2d 664 (1967). See also Marmon v. Mustang Aviation, Inc., 416 S.W.2d 58 (Tex.Civ.App. 1967, writ pending); cf. Wartell v. Formusa, 34 Ill.2d 57, 213 N.E.2d 544 (1966); Fabricius v. Horgen, 257 Iowa 268, 132 N.W.2d 410 (1965).
[2] In Comparative Negligence and Automobile Liability Insurance, 58 Mich.L.Rev. 689, 702-703 (1960), C.J. Peck states:

The first comparative negligence statute of general applicability in this country was enacted in Mississippi in 1910. * * * The statute creates what might be called true comparative negligence in that it rejects the requirement found in Georgia law, that the plaintiff's negligence be less than that of the defendant. * * * [T]he Mississippi rule presents comparative negligence in its purest and most comprehensive form. * * *
[3] Cheatham & Reese, Choice of the Applicable Law, 52 Colum.L.Rev. 959 (1952); Ehrenzweig, Conflict of Laws 552-557 (1962); Currie, Selected Essays on the Conflict of Laws 165, 183, 188. 621, 629, 690, 727 (1963); Leflar, Choice-Influencing Considerations in Conflicts Law, 41 N.Y.U.L.Rev. 267 (1966); Leflar, Conflicts Law: More on Choice-Influencing Considerations, 54 Calif.L. Rev. 1584 (1966); Traynor, Is This Conflict Really Necessary? 37 Texas L.Rev. 657 (1959); Cavers, The Choice-of-Law Process (1965). See also Goodrich, Conflict of Laws § 93 (4th ed. 1964); Speiser, Recovery for Wrongful Death §§ 13:1-:7 (1966); Baade, Counter-Revolution or Alliance for Progress? Reflections on Reading Cavers, The Choice-of-Law Process, 46 Texas L.Rev. 141 (1967); Horowitz, Toward a Federal Common Law of Choice of Law, 14 U.C. L.A.L.Rev. 1191 (1967).