Susan HANLEY, Plaintiff–Appellant,

v.

Thomas R. FORESTER and G.N. Creel, Administrator of the Estate of Thomas J. Forester, Defendants–Appellees.

No. 89–4299.

United States Court of Appeals, Fifth Circuit.

June 20, 1990.

Rehearing Denied Aug. 6, 1990.

Robert O. Homes, Jr., Sandra D. McAdams, Gulfport, Miss., for plaintiff-appellant.

Peter C. Abide, James N. Compton, Biloxi, Miss., for defendants-appellees.

Before WISDOM, POLITZ and JOHNSON, Circuit Judges.

PER CURIAM:

In this diversity action, Susan Hanley appeals the district court's grant of a defense motion for summary judgment. We reverse and remand.

## I. FACTS AND PROCEDURAL HISTORY

In the summer of 1986, Thomas Forester, Jr. (Tommy), a resident of Mississippi, while on a pleasure trip and while intoxicated, drove his Corvette automobile into oncoming traffic on a Florida highway. The resulting head-on collision near Pensacola claimed Tommy's life as well as the lives of four other individuals. Susan Hanley (Hanley), a Louisiana resident and the plaintiff in this case, survived the accident but sustained serious injuries.

Some time after the accident, the insurer of the Corvette, Allstate Insurance Company (Allstate), filed an interpleader action in the district court and deposited a sum representing the limits of its coverage on the Corvette.[1] A number of parties allegedly injured as a result of the accident laid claims to the deposited sum. The interpleader action was ultimately resolved by dividing the sum among various claimants. Hanley received a share of the insurance proceeds, however the amount Hanley recovered was insufficient to adequately compensate her for her injuries.

Thereafter, Hanley filed the instant diversity action in the district court against Tommy's estate and Tommy's father, Thomas R. Forester, Sr. (Forester).[2] Forester, a resident of Mississippi, had co-

signed the note which financed Tommy's Corvette and, in fact, was listed on the vehicle's certificate of title as a co-owner. In the district court, Hanley alleged that Forester was either liable pursuant to a theory of negligent entrustment under Mississippi law or, alternatively, under Florida law as a co-owner of the Corvette. Hanley sought to recover against Forester's homeowner's policy—also underwritten by Allstate.

Forester thereafter filed a motion for summary judgment which was initially denied by the district court. Upon reconsideration, however, the district court granted Forester's motion for summary judgment and dismissed Forester from the action. In granting summary judgment in favor of Forester, the district court, ruling on the choice of law question, held that Mississippi law was controlling. Further, the district court concluded that Hanley had failed to make a prima facie showing that Forester had negligently entrusted the Corvette to Tommy.[3] Alternatively, the district court ruled that because Forester held mere naked title to his son's Corvette, Forester could not be held liable for negligent entrustment under any circumstances.

Hanley thereafter timely filed the instant appeal.

## II. DISCUSSION

On appeal Hanley assigns error to the district court's choice of law determination as well as the district court's conclusion that there was insufficient evidence to support recovery based on a negligent entrustment theory. With respect to the choice of law question, the significance of Hanley's argument is manifest. If Florida law is properly applied in this case, then Forester may be held liable for the injuries sustained by Hanley since, in Florida, a co-owner of a vehicle may be liable for the negligence of the vehicle's driver if the vehicle is driven with the owner's consent

1. $70,000.00.

2. Tommy's estate was, for all practical purposes, insolvent.

3. There was conflicting evidence as to whether Forester had reason to know or suspect that Tommy had a propensity to operate a vehicle while under the influence of intoxicants.

**1032**

or knowledge. *See Orefice v. Albert*, 237 So.2d 142 (Fla.1970); *Southern Cotton Oil Co. v. Anderson*, 80 Fla. 441, 86 So. 629 (1920); *Anderson v. Southern Cotton Oil Co.*, 73 Fla. 432, 74 So. 975 (1917). On the other hand, if Mississippi law is properly applied in this case, then Forester will be liable for Hanley's injuries only if Hanley establishes that Forester was negligent in entrusting the vehicle to Tommy. *See, e.g., Dixie Drive It Yourself System Jackson Co. v. Matthews*, 54 So.2d 263 (1951).

■ In resolving the question of which state's law is best applied to the particular facts of this case, we are mindful of the principle that a federal court sitting in a diversity case is obligated to apply the substantive law of the state in which it is sitting. The core of what has become known as the "Erie Doctrine" is that the substantive law to be applied by a federal court in any case before it is state law, except when the matter before the court is governed by the United States Constitution, an Act of Congress, a treaty, international law, the domestic law of another country, or in special circumstances, by federal common law. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Accordingly, we are confronted with deciding how the Supreme Court of Mississippi would rule if faced with the particular facts of this case. In making such a determination, the focus of our inquiry logically turns to the previous holdings of that Court.

Prior to 1968, the law of Mississippi mandated that the law of the place of the tort would govern the resolution of all issues arising out of a tort action. In 1968, however, the Mississippi Supreme Court adopted the "center of contacts" or "center of gravity" test for resolution of conflicts of law disputes in tort cases. *Mitchell v. Craft*, 211 So.2d 509 (Miss.1968). The center of contacts approach provides that the law of the state with the most substantial contacts with the parties and the subject matter of the action would be controlling in tort cases. In *Boardman v. United Services Auto. Ass'n*, 470 So.2d 1024 (Miss. 1985), the Mississippi Supreme Court, fur-

ther refining its earlier holdings, held that the center of contacts test may be applied in piecemeal fashion such that in a single case, the law of one state may be applied to one issue in the case while the law of another state may apply to another issue in the case depending upon which state has the most significant contacts with respect to each particular issue.

■ On appeal, Forester argues that the Mississippi Supreme Court in *Mitchell* abrogated the long standing rule that the law of the place of the tort is the proper choice of law in tort cases. Our analysis of *Mitchell* and its progeny, however, disproves Forester's contention and leads us to the conclusion that the Mississippi Supreme Court has held fast to the principle that the law of the place of the accident is presumptively the law to be applied. Nevertheless, we note that the Mississippi Supreme Court's preservation of the rule of *lex loci delicti* in *Mitchell* was not absolute. Rather, the law of Mississippi as it stands today provides that the law of the place of the tort is the preferred choice of law which should yield to the law of another state only where the other state is shown to have a more significant relation to any given issue in the case.

Indeed, the very language used by the Mississippi Supreme Court in *Mitchell* lends credence to such a conclusion. In *Mitchell*, the Mississippi Supreme Court, as if responding directly to Forester's arguments in the instant case, instructed that while

> [o]rdinarily, the local law of the state where the injury occurred will determine the rights and liabilities of the parties, *"unless* with respect to the particular issue, some other state has a more significant relationship...."

*Mitchell*, 211 So.2d at 516 (emphasis in original) (citations omitted). Thus, we decline Forester's invitation to interpret the Mississippi Supreme Court's holding in *Mitchell* so as to conclude that Mississippi has completely abandoned the doctrine of *lex loci delicti*. Moreover, our research has not revealed a single case where the Mississippi Supreme Court has applied Mis-

sissippi law to a tort action arising from an automobile accident that occurred in another state except where all of the parties to the suit were residents of Mississippi.

▇ In further support of his contention that Mississippi law was properly applied by the district court, Forester argues that Mississippi's interest in the subject matter of the instant case is considerably more significant than any related interest held by Florida. More precisely, Forester argues that the public policy of Mississippi compels this Court to conclude that the liability of Forester, a Mississippi resident and co-owner of the Mississippi registered automobile in this case, should be determined under Mississippi law. According to Forester, "it makes little sense for an owner to have to follow another state's ownership laws depending on what state he happens to be driving through."

We are not persuaded by Forester's contentions. To the contrary, by applying the logic Forester espouses, we are convinced that Florida's pronounced concern for highway safety is the more compelling policy consideration vis-a-vis Mississippi's purported interest in this case. Florida courts have mandated that the owner of a vehicle is liable for the negligent operation of the vehicle if the vehicle is being driven with the owner's consent or knowledge. Such a standard is far more stringent than that provided for by the law of Mississippi; the standard evidences Florida's strong policy concern for safety on its highways. It would make little sense for Florida residents to be held liable under Florida law while out of state residents in the same situation could escape liability simply because they enjoyed the good fortune to live elsewhere. Such a result would clearly be at odds with the policy of Florida which underlies its stringent rule.

Forester next argues that Florida's relationship with the events which give rise to this suit is so attenuated as to preclude the application of Florida law. In support of that contention, Forester cites this Court's holding in *Beck by Chain v. Thompson*,

818 F.2d 1204 (5th Cir.1987). In *Beck*, this Court was faced with reviewing the district court's choice of law determination in a case which arose from injuries sustained as a result of an airplane crash in Arizona. None of the parties in *Beck* had any relationship to Arizona other than the fact that the aircraft crashed there. A panel of this Court, concluding that "Arizona had no relationship with the claim apart from the fortuitous circumstance that the aircraft crashed there", affirmed the district court's application of Mississippi law. *Id.* at 1208.

In contrast, the instant case provides a situation where Florida has a pronounced relationship with the accident which gives rise to this action. In *Beck*, the aircraft was not using Arizona highways nor was it subject to Arizona aviation law. In the instant case, however, Tommy was operating a motor vehicle on a Florida highway and was subject to Florida traffic regulations. The State of Florida has a manifest interest in preserving the integrity and safety of its highway system and preventing the type of injuries which resulted from this tragic accident. Those persons who enter the State of Florida and operate a motor vehicle on its highways are properly subject to the State's owner liability laws. As noted above, it would be incongruous for Floridians to be bound by the strict owner liability laws while those individuals who drive into the state and take advantage of Florida's hospitality are fortuitously able to evade the same laws.

Further evidence of Florida's strong policy considerations regarding safety on its highways may be found in the State's apparent reluctance to change its strict owner liability laws.[4] The owner liability law which still exists today was first articulated by the Florida Supreme Court in *Southern Cotton Oil Co. v. Anderson, supra*, since then, has been consistently followed by Florida courts. *See, e.g., Caetano v. Bridges*, 502 So.2d 51 (Fla.App.1987) ("Under Florida's dangerous instrumentality doctrine, 'the owner of a vehicle is liable to third person for its negligent operation

---

**4.** Mississippi, as is the case with most other states, has relaxed liability laws in the context of

owner liability for the negligent operation of a motor vehicle by another.

by anyone to whom it has been entrusted, even if the bailee grossly violates the owner's express instructions concerning its use.'") (quoting *Avis Rent–A–Car Systems, Inc. v. Garmas,* 440 So.2d 1311, 1313 (Fla. 3d DCA 1983). It thus seems patently clear that Florida lawmakers still consider an automobile to be an instrumentality sufficiently dangerous to warrant the continued existence of such a stringent rule.

In sum, three circumstances lead to the conclusion that Florida law is controlling in this case: Florida's strong policy of maintaining the safety of its highways, 2) the Mississippi Supreme Court's adherence to the principle that the law of the place of the accident controls liability issues unless some other state has a more significant relationship, and 3) the absence of any case wherein the Mississippi Supreme Court applied the law of Mississippi to an action arising from an automobile accident except where all the parties involved were Mississippi residents. We are thus persuaded that the Mississippi Supreme Court, had it been faced with the facts of this case, would have applied the law of Florida to Hanley's liability claims. Accordingly, we conclude that the district court erred in determining that Mississippi rather than Florida law controlled in this case. So concluding, we do not reach Hanley's arguments regarding the propriety of the district court's summary judgment on the issue of negligent entrustment under Mississippi law.

In remanding this case to the district court, we hold only that Florida law applies to the merits of Hanley's claim. We do not decide whether a Florida court applying Florida law would, on the facts of this case, necessarily hold Mr. Forester vicariously liable for the negligence of Tommy. We note that the Florida rule which is addressed in this opinion was judicially, not legislatively, established in Florida over seventy years ago. *Southern Cotton Oil Co. v. Anderson, supra.* The Florida Legislature has not yet recognized the public policy concern that underlies the judicially promulgated rule. Moreover, while the rule has not been abrogated by the Florida Supreme Court, there is some question just how far the Florida courts have gone or will go in holding a co-owner strictly liable for the negligence of the other co-owner. *See e.g., Hertz Corporation v. Dixon,* 193 So.2d 176, 177 (Fla.App.1966) (declining to flatly hold that a co-owner is vicariously liable for the operation of an automobile by the other co-owner); *see also Hammack v. Veillette,* 233 So.2d 836 (noting that the doctrine of *respondeat superior* lies at the core of the owner's-liability rule) and *Orefice v. Albert,* 237 So.2d 142 (Fla.1970) (discussing the rule and underscoring that the owner is held liable because the negligent driver is deemed to be operating the vehicle with the owner's actual or implied consent.) In any event, we conclude that the trial court is better suited, in the first instance, to determine whether Mr. Forester is liable under prevailing Florida law.

## III. CONCLUSION

For the foregoing reasons, we conclude that the Mississippi Supreme Court, had it been faced with the choice of law question presented by the instant case, would have applied the law of Florida rather than the law of Mississippi. Accordingly, we are constrained to conclude that the district court erred in applying Mississippi law. The judgment of the district court is reversed; this case is remanded for proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.