**IN RE AIR DISASTER AT LITTLE ROCK, ARKANSAS ON JUNE 1, 1999.**

This Document Relates to Michael Sattari, et al. v. American Airlines, Inc. Docket No. 4:99CV458HW

Barbara J. York–Norderhaug Administratrix of the Estate of Debra Anne Sattari and First National Bank of Central California, Conservator of the Estate of Michael J. Sattari, Plaintiffs,

v.

American Airlines, Inc., Defendant.

MDL No. 99–1308.

United States District Court,
E.D. Arkansas,
Western Division.

Dec. 20, 2000.

Robert R. Bodoin, Mark Edwin Burge, John C. Burnside, Bodoin, Burnside & Burge, P.C., Fort Worth, TX, Matthew H.P. Warner, Graves Warner, PLC, Little Rock, AR, for Plaintiffs.

Michael E. Hale, D. Keith Fortner, Barber, McCaskill, Jones & Hale, P.A., Little Rock, AR, for Defendants.

Philip E. Kaplan, Regina Haralson, Kaplan, Brewer & Maxey, P.A., Little Rock, AR, Michael G. Smith, Michael Norris Shannon, Rose Law Firm, Little Rock, AR, Scott J. Lancaster, J. Phillip Malcom, William H. Sutton, Friday, Eldredge & Clark, Little Rock, AR, Byron L. Freeland, Marshall S. Ney, Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C., Little Rock, AR, Ted Boswell, James Ralph Jackson, Boswell, Tucker & Brewster, Bryant, AR, Sam Hilburn, Hilburn, Calhoon, Harper, Pruniski & Calhoun, Ltd., North Little Rock, AR, Debbie Dudley Branson, Frank L. Branson, George Quesada, Frank L. Branson, P.C., Dallas, TX, Peter A. Miller, The Law Offices of Peter Miller, Little Rock, AR, David A. Couch, Dover & Dixon, Little Rock, AR, Kathlynn G. Fadely, Barry F. Benson, Gary W. Allen, U.S. Department of Justice, Torts Branch, Washington, DC, Mark B. Baylen, Federal Aviation Administration, Litigation Division, Washington, DC, John R. Howie, Ladd Sanger, Howie & Sweeney, L.L.P., Dallas, TX, John H. Martin, Jennifer P. Henry, George Lucas Ashley, Maureen A. Murry, Thompson & Knight, L.L.P., Dallas, TX, R. Bryant Marshall, Marshall & Owens, P.A., Jonesboro, AR, Norman R. Gordon, Norman R. Gordon & Associates, Shreveport, LA, C. Burt Newell, Bachelor, Newell & Oliver, Hot Springs, AR, Mark F. Hampton, Hampton, Larkowski & Benca, Little Rock, AR, David H. Williams, Little Rock, AR, Camille Nicodemus, Kasowitz, Benson, Torres, Friedman, L.L.P., New York, NY, Scott C. Trotter, G. Alan Perkins, Hill Gilstrap Perkins Trotter & Warner, P.A., Little Rock, AR, Jimmy W. Evans, Steve Maxwell, Michael D. Schattman, Hill Gilstrap, Arlington, TX, Katherine A. Staton, Jackson Walker L.L.P., Dallas, TX, Robert A. Clifford, Kevin P. Durkin, Clifford Law Offices, P.C., Chicago, IL, Randal R. Craft, Jr., William C. Brown, III, Louise B. Cobbs, Haight Gardner Holland & Knight, New York, NY, James W. Orr, Bowers Orr & Dougall, L.L.P., Columbia, SC, David E. Rapoport, Paul D. Richter, Rapoport Law Offices, P.C., Rosemont, IL, Gene A. Ludwig, Ludwig Law Firm, PLC, Little Rock, AR, Michael G. McQuillen, James F. Murphy, Peter V. Bustamante, Adler, Murphy & McQuillen, Chicago, IL, Robert Stockton, Carr & Carr, Tulsa, OK, Nelson P. Miller, Fajen & Miller, P.L.L.C., Grand Haven, MI, Gerald Sterns, Elizabeth Walker, Sterns & Walker, Oakland, CA, Michael L. Slack, John C. Allman, Slack & Davis, L.L.P., Austin, TX, David Cook, Kreindler & Kreindler, New York, NY, Kent Krause, Speiser, Krause, Dallas, TX, R. Brent Cooper, Cooper & Scully, Dallas, TX, Charles L. Coleman, III, Mark L. Venardi, Holland & Knight LLP, San Francisco, CA, William M. Bache, Monroe & Associates, Tucson, AZ, John A. Greaves, Baum Hedlund Aristei Guilford & Downey, Los Angeles, CA, Collin M. (Marty) Fritz, Trecker & Fritz, Honolulu, HI, D. Douglas Cotton, American Airlines, Inc., Fort Worth, TX, Thomas J. Morris, III, Morris & Powell, Ponca City, OK, Andrew Piel, Bodoin, Burnside & Burge, P.C., Fort Worth, TX, Rickey H. Hicks, Little Rock, AR, George A. Manfredi, Daniel A. Johnson, Daniel M. Sullivan, Sullivan, Johnson & Manfredi, LLP, Los Angeles, CA, for Air Crash at Little Rock, Ark., on June 1, 1999.

## *MEMORANDUM OPINION*

HENRY WOODS, District Judge.

### I. THE FACTS

Mrs. Debra Sattari, a passenger on American Airlines' Flight 1420 from Dallas, Texas to Little Rock, Arkansas, on June 1, 1999, was killed in the crash at

Little Rock of American Airlines' MD–80 jet aircraft being operated on this flight. She is survived by a son, Michael Sattari; two sisters, Mary Denise Taylor and Donna Taylor Connor; her mother, Barbara J. York–Norderhaug; and her father, Bobby Bean Taylor. Her survivors are all residents of California, and her estate is being probated in California.

Suit was originally filed by the survivors in the Circuit Court of Pulaski County, Arkansas, on June 8, 1999, but was removed and consolidated with the multidistrict litigation pending in the Eastern District of Arkansas. Plaintiffs filed an amended complaint on May 31, 2000.

## II. THE CHOICE OF LAW ISSUE

A serious issue in this case is whether the wrongful death and survival statute of California or Arkansas should apply. There are significant differences in the damages permitted in the two jurisdictions:

(1) Arkansas allows wrongful death recovery to Debra Sattari's estate, her son, her parents, and her two sisters; while, with minimal exception, California allows recovery only to Ms. Sattari's son;

(2) Arkansas allows Ms. Sattari's family to recover for mental anguish of the grief normally associated with the loss of a loved one, while California does not; and

(3) Arkansas allows recovery for Ms. Sattari's pre-death pain and suffering in a survival action, while California does not.

Thus, by requesting the application of California law, American seeks to prevent recovery to any plaintiff for grief and mental anguish associated with Ms. Sattari's death, as well as for Ms. Sattari's pain and suffering prior to death. American also wants the benefit of the California rule that makes all of Debra Sattari's family, except for her son, ineligible for wrongful death damages.

■ A true conflict thus exists between the laws of these two states, and a choice-of-law determination is necessary. In making this determination, the forum court must follow the choice-of-law rules of Arkansas, the state in which the case was originally filed. *Klaxon Co. v. Stentor Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941).

American forcefully argues that Arkansas' choice-of-law would apply California law because the decedent and all the survivors are residents of California, and decedent's estate is being probated in California. American's arguments are buttressed by reliance on the Restatement (Second) of Conflict of Laws, §§ 145, 175 (1969). The Restatement position is sometimes over-simplified by being described as using the "most significant relationship" test. In American's view, because the parties and the decedents are all California residents, that state has "the most significant relationship" to this litigation. However, other factors noted in Section 175 of the Restatement are: (a) the place where the injury occurred; and (b) the place where the conduct causing the injury occurred. These factors weigh heavily in favor of Arkansas.

■ While my distinguished colleague, U.S. District Judge Elsijane Roy, cites the Restatement in *Wallis v. Mrs. Smith's Pie Co.*, 261 Ark. 622, 550 S.W.2d 453 (1977), a leading choice-of-law opinion written while she was a Justice of the Arkansas Supreme Court, it is obvious that her principal reliance was on the comprehensive theories of Professor Robert A. Leflar expounded in a series of treatises and Law Review articles. Dean Leflar, Arkansas' leading legal scholar and a giant in the area of conflict of laws, proposed five choice-influencing considerations in cases involving conflict of laws:

(1) Predictability of results;

(2) Maintenance of interstate and international order;

(3) Simplification of the judicial task;

(4) Advancement of the forum's governmental interests; and

(5) Application of the better rule of law.

There are important differences in the approach of Dean Leflar and the Restatement. First, the Restatement actively examines the policies of any interested non-forum states, while Professor Leflar's approach considers only the forum's governmental interests. Thus, while the Restatement "balances competing interests" of Arkansas and California, the choice-influencing considerations look only to whether Arkansas has interests that favor the application of its own law. Second, Professor Leflar's choice-influencing considerations look to which state has the better substantive law on the issue before the court, while the Restatement does not.

Any doubt as to the choice-of-law rules presently followed by the Arkansas Supreme Court was laid to rest in an opinion, subsequent to *Wallis v. Mrs. Smith's Pie Co.*, *supra.* "We adopted the [Robert A. Leflar choice-influencing considerations] approach in *Wallis v. Mrs. Smith's Pie Co.* and have continued to use the approach." *Schlemmer v. Fireman's Fund Ins. Co.*, 292 Ark. 344, 346, 730 S.W.2d 217, 218 (1987). "[I]n *Schlemmer,* the majority makes no mention of the Second Restatement and does not purport to apply its test. This omission signals the abandonment of the Second Restatement in favor of exclusive reliance on Leflar's choice-influencing considerations." *Carmen L. Arick, Note, Conflict of Laws—Multistate Torts—Arkansas Relies on Choice–Influencing Considerations and the 'Better Rule of Law'*, 10 U.Ark. Little Rock L.J. 511, 519 (1987); *see also L. Lynn Hogue, Schlemmer· v. Fireman's Fund Insurance Co.: A Case for Rethinking Arkansas' Choice–of–Law Rule for Interstate Torts*, 12 U.Ark. Little Rock L.J. 459, 460 (1989) (stating that "the marriage between the second Restatement and [Dean Leflar's] 'better rule' theory apparently is ended,

and Arkansas now has a unitary choice-of-law theory for interstate torts.")

It follows, therefore, that this case must be analyzed in the light of Dean Leflar's choice-influencing considerations. The first two considerations: (a) predictability of results, and (b) maintenance of interstate and international order, have no relevance to this litigation. The third consideration, simplification of the judicial task, may have some slight relevance but is not a major consideration.

We, therefore, focus on the last two considerations.

### III. ADVANCEMENT OF THE FORUM'S GOVERNMENTAL INTEREST.

■ "A state's strong policy concerns, represented by [advancement of the forum's governmental interests], can arise in connection with almost any area of the law, but *are especially important in personal injury and other torts cases.* The same is true of a court's preference for applying what it regards as the 'better rule' of law." *Robert A. Leflar, Conflict of Laws: Arkansas—The Choice–Influencing Considerations*, 28 Ark.L.Rev. 199, 203–04 (1974) (emphasis added). *See, e.g., Schlemmer v. Fireman's Fund Ins. Co.*, 292 Ark. 344, 346–48, 730 S.W.2d 217, 219 (Ark.1987) (relying almost exclusively on the last two choice-influencing considerations in a personal injury case); *Wallis v. Mrs. Smith's Pie Company*, 261 Ark. 622, 631–32, 550 S.W.2d 453 (Ark.1977); *Mitchell v. Craft*, 211 So.2d 509, 514 (Miss.1968).

American argues that Arkansas has "little or no interest . . . in applying its laws to residents of a foreign state." We do not agree that Arkansas is only concerned with the provincial protection and self-interest of its domiciliaries, and not concerned with the well-being of visitors and strangers. *See Leflar, Conflict of Laws*, 28 Ark.L.Rev. 199, 213 (1974).

Indeed, in *Wallis v. Mrs. Smith's Pie Company*, 261 Ark. 622, 550 S.W.2d 453

(Ark.1977)—the very case in which Arkansas first endorsed Leflar's choice-influencing considerations—the Arkansas Supreme Court held that Arkansas "has a *predominate interest* in applying its comparative fault statutes to its own citizens *and those who seek relief in its courts.*" *Id.* at 632, 550 S.W.2d at 458 (emphasis added). As Professor Leflar observed almost thirty-five years ago, "states are less concerned than they once were with protection of the local citizen as distinguished from the 'stranger,' and more inclined than they once were to promulgate and enforce laws that apply to both equally, well beyond the minimum equalities prescribed by the federal constitution. *Visitors as well as residents may be protected by 'good' local laws.* The domicile of parties in one state or another has less significance today, and may well have far less in another generation, than it once had as a basis for locating true governmental interest." *Leflar, Choice: Influencing Considerations in Conflicts Law,* 41 N.Y.U.L.Rev. 267, 293–94 (1966) (emphasis added).

Professor Leflar analyzed the advancement of a forum's governmental interest in the context of the following hypothetical: Plaintiff, a domiciliary of Ontario, regularly keeps his car in Ontario and has it insured there. Plaintiff invites Defendant, also a domiciliary of Ontario, to ride with him from Ontario to New York. While in New York, Plaintiff drives negligently and injures Defendant. Under New York law, the standard for Defendant's liability is ordinary negligence; by Ontario statute, Defendant is not liable to Plaintiff for injuries caused by Plaintiff's negligent driving, but only for those caused by gross negligence. According to Professor Leflar's analysis:

New York's interest in applying its own law rather than Ontario's on these issues is based primarily on its status as a justice-administering state. In that status, it is *strongly concerned* that persons who come into New York courts to litigate facts with substantial New York connection have their cases determined according to rules consistent with New York's concepts of justice, or at least not inconsistent with them. *That will be as true for non-domiciliary litigants as for domiciliaries.*

*Leflar, Conflicts Law,* 54 Cal.L.Rev. 1584, 1594 (1966) (emphasis added).

In the present case, Arkansas' interest in applying its own law is based on its status as a justice-administering state. It is strongly concerned that persons who come into Arkansas courts with substantial Arkansas connection have their cases determined according to rules consistent with Arkansas' concepts of justice, or at least not in a manner inconsistent with them. That is just as true for non-domiciliary litigants as it is for domiciliaries.

Does California have an interest in preventing its domiciliaries from recovering damages in a wrongful death case? It hardly seems logical. While California may have an interest in protecting its domiciliaries from what it may consider excessive damage judgments against them, it can hardly be disturbed that its domiciliaries receive the bounty of a more favorable wrongful death and survivor statute. This point is illustrated in the case of *Hurtado v. Superior Court of Sacramento County,* 11 Cal.3d 574, 114 Cal.Rptr. 106, 522 P.2d 666 (1974). In this case, the California Supreme Court stated:

The interest of a state in a tort rule limiting damages for wrongful death is to protect defendants from excessive financial burdens or exaggerated claims ... [This interest] is also primarily local ... [T]hat is, *a state by enacting a limitation on damages is seeking to protect its residents from the imposition of these financial burdens.* Such a policy "does not reflect a preference that widows and orphans should be denied full recovery."

*Id.* at 670, 114 Cal.Rptr. 106, 522 P.2d 666 (citations omitted, emphasis added). *Hurtado* involved a wrongful death action arising from an automobile accident in

Sacramento, California. Plaintiffs were residents and domiciliaries of Mexico; defendants were residents of California. Defendants argued that the trial court should have applied Mexico's, i.e. the domiciliary state's, limitation of damages for wrongful death. The Supreme Court disagreed:

> Since it is the plaintiffs and not the defendants who are the Mexican residents in this case, Mexico has *no interest* in applying its limitation of damages—Mexico has no defendant residents to protect and has *no interest in denying full recovery to its residents injured by non-Mexican defendants.*

*Hurtado,* 522 at 670.

## IV. APPLICATION OF THE BETTER RULE OF LAW

In a case arising out of Nebraska, the Court of Appeals for the Eighth Circuit has found the other Leflar factors so persuasive that it was not necessary to reach the last factor—whether the Arkansas wrongful death statute declares the better rule of law. *See Nesladek v. Ford Motor Co.,* 46 F.3d 734, 740 (8th Cir.1995). ("We conclude that ... our analysis of the other Leflar factors favor the application of Nebraska law, and so we need not decide which state has the better law.") (internal brackets omitted); *see also Schwartz v. Consolidated Freightways Corp. of Del.,* 300 Minn. 487, 493, 221 N.W.2d 665, 669 (1974). ("[W]e hold that Minnesota's governmental interest [i.e. the fourth choice-influencing consideration] in this case is sufficient to apply the Minnesota comparative negligence statute rather than the contributory negligence law of the State of Indiana so that we need not decide the case under the better-law rule [i.e. the fifth choice-influencing consideration] ....")

In the case before this court, American Airlines has admitted its fault in causing the death of Mrs. Debra Sattari. Can it be seriously argued that a statute that fails to compensate parents and siblings at the expense of the one causing the loss of a loved one postulates to the better rule of law? The better rule of law is almost always that which treats injured parties more fairly. Dean Leflar has perceptually observed:

> As between protecting presumably insured tortfeasors on the one hand, and fairly compensating their victims on the other, the states of the United States are today pretty well committed both legally and philosophically to the latter position. A court in this country would almost automatically lean toward the rule which allows the sort of compensation to which our courts and people are accustomed.

*Robert A. Leflar, Conflict of Laws: Arkansas—The Choice-Influencing Considerations,* 28 Ark.L.Rev. 199, 208 (1974).

The Seventh Circuit Court of Appeals has recently had occasion to examine one aspect of the California wrongful death and survival act, finding it "worse" and "more archaic." *Kuehn v. Childrens Hospital, Los Angeles,* 119 F.3d 1296, 1302 (7th Cir., 1997). The court was commenting on California's rule that a cause of action for pain and suffering does not survive the victim's death.

## V. THE ARKANSAS STATUTE

■ Even if the Arkansas case law did not dictate the application of the Leflar choice-of-law rules in this cases, there is an Arkansas statute which I consider to be decisive. Three subsections of the statute are relevant for present purposes. The first such subsection provides:

> (a) All crimes, torts, and other wrongs committed by or against a pilot or passengers while in flight over or above the lands and waters of this state shall be governed by the laws of this state.

Ark.Code Ann. § 27–116–301(a) (1999). Thus, all torts committed by a pilot while in flight over Arkansas shall be governed

by the local law of Arkansas. The next subsection provides:

> (b) Whether damage occasioned by or to an aircraft while over this state constitutes a tort, crime, or other wrong by or against the owner of the aircraft shall be determined by the laws of this state.

Ark.Code Ann. § 27–116–301(b) (1999). As a result of this provision, the issue of whether damage caused by an aircraft constitutes a "tort" is also to be governed by the local law of Arkansas.

The last and most important subsection (for this case) of the statute is entitled *"Liability for injury to persons or property"*, and it states:

> (b) The liability of the owner or pilot of an aircraft carrying passengers for injury or death to his passengers shall be determined by the rules of law applicable to torts on the lands or waters of this state arising out of similar relationships.

Ark.Code Ann. § 27–116–303(b) (1999). Thus, the nature and extent of the "liability" of the owner or pilot of an aircraft for injury or death to his passengers is to be determined by the local tort law of Arkansas.

I am not impressed by American Airlines' argument that this statute should not be applied in the case at bar. The statute language fits this case like a glove.

Other courts, upon considering statutes similar to those at issue here, have found them to serve a choice-of-law function. *See, e.g., Allen v. United States*, 370 F.Supp. 992, 1005 (E.D.Mo., 1973) (applying the Missouri statute to choose Missouri local law); *Hough v. Rapidair, Inc.*, 298 S.W.2d 378, 382 (Mo., 1957); *In re Aircrash Disaster Near Roselawn, Indiana on October 31, 1994*, 948 F.Supp. 747, 755 (N.D.Ill., 1996) (acknowledging a similar Indiana statute to be a "choice of law rule"). American concedes that a court "subject to constitutional restrictions will follow a statutory directive of its own state on choice of law," *citing* Restatement (Second) *Conflict of Laws*, Section 6(1).

The critical language in Ark.Code Ann. § 27–116–303(a) is that torts against passengers in flight shall be governed by the laws *of this state* (emphasis added), and Ark.Code Ann. § 27–116–303(b) states that liability of an aircraft owner for injury or death "shall be determined by the rules of law ... *of this state.*" (emphasis added)

Professor Leflar has identified such language as being critical to determining whether a statute does or does not contain a choice-of-law rule:

> There are some statutes, however, that, either expressly or by obvious implication, do include choice-of-law answers. An income tax law that applies "to all persons domiciled *in this State*" or an automobile licensing law applicable "to vehicles kept *in this State* for more than four months in the year" or an enactment covering "all sales of explosives *in this State*" is clear on its face. *It presents no difficult problems of statutory construction, and it is apparent that the quoted statute either does or does not apply in any particular case, once the facts are known.*

*Robert A. Leflar, Choice–of–Law Statutes,* 44 Tenn.L.Rev. 951 (1977) (emphasis added). The Arkansas statutory language at issue in this case is just as easy to construe as Leflar's three examples quoted above. *Greunke v. North American Airways Co.*, 201 Wis. 565, 230 N.W. 618, 619–620 (1930), relied on by American deals with a statute which does not contain the above language.

## VI. CONCLUSION

Arkansas case law and statutory law dictate that the Arkansas wrongful death and survival statute should be applied in this case. The court will instruct the jury in accordance with the Arkansas Model Jury Instructions on wrongful death and survival. Since Arkansas permits recovery of punitive damages in such cases, and plaintiffs have sued for punitive damages,

the punitive damage issue will be bifurcated and tried in a consolidated case at a later date.