851 F.Supp. 788 (1994)
Regina RIEGER
v.
GROUP HEALTH ASSOCIATION.
No. EC 91-218-D-D.
United States District Court, N.D. Mississippi, Eastern Division.
May 2, 1994.
*789 J. Joshua Stevens, Jr., H. Lee Morrison, Jr., West Point, MS, for plaintiff.
L.F. Sams, Jr., John G. Wheeler, Tupelo, MS, Gary A. Godard, Rockville, MD, for defendant.

MEMORANDUM OPINION
DAVIDSON, District Judge.
This medical malpractice case came before the undersigned for trial in February of this year. The pleadings and trial transcript will show that the court was faced with several choice of law issues. Notably, the choice of law questions presented competing choices between true contributory negligence (complete bar to recovery), versus comparative fault principles (which merely reduce recovery by a percentage of plaintiff's negligence); and, the application or nonapplication of a statutory cap on noneconomic damages.
The record in this case will reveal that while plaintiff was a resident of the State of Maryland, she was examined and treated over the course of several months by the defendant Group Health Association (Group Health) at its facilities in Maryland and the District of Columbia. Plaintiff then moved to Mississippi where she was diagnosed with colon cancer within hours of her move to this *790 state. She then underwent substantial surgery and treatment for colon cancer in Mississippi.[1] The sum and substance of plaintiff's medical malpractice claim stemmed from a negligent failure by Group Health physician employees for not diagnosing her colon cancer several months earlier when the cancer was still in an early stage of development.[2] The significant and substantial contacts which formed the basis of plaintiff's claims with regard to Group Health occurred primarily in Group Health facilities in Maryland, along with a few contacts in Group Health facilities in the District of Columbia.
At the conclusion of a hard fought trial which lasted from February 7-15, 1994, the jury empaneled to hear this case agreed with the plaintiff's claim that the defendant's physician employees had breached the physician's professional standard of care and returned a verdict for $28,000.00 in economic damages and $1,500,000.00 in noneconomic damages. This case presented an unusual twist for a medical malpractice claim in that the court included a comparative negligence instruction and interrogatory for the jury's consideration. The instruction and interrogatory were supported by proof introduced at the trial that the plaintiff may have failed to follow an instruction issued by a Group Health physician with regard to her care. To this end, the jury found the plaintiff 35% liable for her damages and the defendant 65% liable. Therefore, under comparative negligence principles, defendant's liability for plaintiff's economic damages would be $18,200.00 (65% of $28,000.00) and $975,000.00 (65% of 1,500,000.00) for noneconomic damages. Interestingly, under strict contributory negligence principles, plaintiff's recovery would have been $0.00 since any negligence on the part of the plaintiff bars recovery. 57A Am.Jur.2d § 846 (1989).

Conflict of Law Choices
In a diversity action, a district court is bound to apply the substantive law of the forum state, including that state's conflict of law rules. Klaxton Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Price v. Litton Systems, Inc., 784 F.2d 600, 602 (5th Cir.1986); McCain v. Cox, 531 F.Supp. 771, 779 (N.D.Miss.1982). Mississippi has adopted the "center of gravity" or "most substantial contacts" rule to determine whether Mississippi law or a foreign state's law will be applied in Mississippi federal diversity actions. Price, 784 F.2d at 602; Richardson v. Clayton & Lambert Mfg. Co., 634 F.Supp. 1480, 1482 (N.D.Miss.1986); McCain, 531 F.Supp. at 779; Newman v. Newman, 558 So.2d 821, 823 (Miss.1990); Spragins v. Louise Plantation, Inc., 391 So.2d 97, 99-100 (Miss.1980); Mitchell v. Craft, 211 So.2d 509, 515 (Miss.1968). In applying the center of gravity test to a tort law action, a court sitting in Mississippi would determine the law of the state which has the most significant relationship to the occurrence. The court would look to the place where the injury occurred, place where the conduct causing the injury occurred, the domicil or residency of the parties, and the place where the relationship, if any, is centered. Price v. Litton Systems, Inc., 784 F.2d 600, 603 (5th Cir.1986), citing Mitchell v. Craft, 211 So.2d 509, 515 (Miss.1968). In applying the "center of gravity" or "substantial contacts" test, the undersigned concluded that the State of Maryland had the closer nexus with the events that formed the basis of plaintiff's complaint. As the record will reflect, plaintiff was a resident of Maryland as were most of the Group Health physicians who had some involvement with her care. Additionally, several events and contacts with the defendant physicians including several asserted omissions occurred in Group Health facilities in Maryland. For these reasons, the court determined that the substantive law of Maryland would control in this medical malpractice case. However, the court's responsibility for the application of Maryland law does not end here.
*791 In applying Mississippi choice of law principles pursuant to the "center of gravity" or "substantial contacts" test, application of law from a foreign jurisdiction having the more substantial contacts is not an all or nothing proposition. To the contrary, once a court has determined the state with the most significant relationship with a cause of action, the court is under no obligation to apply the law of that state to every facet of the case. Fells v. Bowman, 274 So.2d 109, 112 (Miss.1973). Mississippi has long recognized that when certain aspects of the law of a foreign jurisdiction are repugnant and offensive to the public policy of this state, the forum court should decline the opportunity to give credence to the same and instead apply the better reasoned rule of law adopted by Mississippi. As noted above, the State of Maryland is among the remaining jurisdictions which clings to the strict notions of pure contributory negligence. That is, any amount of negligence in a tort action on the part of the plaintiff, no matter how slight, will operate as a complete bar to recovery. Indeed, had pure contributory principles been applied to the case sub judice, the plaintiff would have recovered nothing.
This jurisdiction in which this federal district court sits takes a dim view of pure contributory negligence principles and finds the same repugnant to the public policy of this state.[3] Mississippi considers comparative fault principles as the better reasoned rule of law. Comparative negligence has been a fixture in the jurisprudence of this state since 1910. Mitchell v. Craft, 211 So.2d 509, 513 (Miss.1968). At the close of all the proof at trial, the undersigned issued a lengthy, comprehensive bench ruling for its reasons in rejecting the Maryland approach of pure contributory negligence over the Mississippi rule of comparative fault. For a detailed review of the court's treatment of this issue, reference to the bench opinion in the trial transcript will furnish much detail and discussion. For now the court notes, as discussed in the bench opinion, that the following Mississippi cases expressly hold that contributory negligence is repugnant to the public policy of Mississippi; and, courts situated in this state are to opt for Mississippi's comparative fault principles even though contacts with the contributory negligence jurisdiction predominate. See McDaniel v. Ritter, 556 So.2d 303, 316 (Miss.1989); Boardman v. United Services Automobile Association, 470 So.2d 1024, 1039 (Miss.1985); Fells v. Bowman, 274 So.2d 109, 113 (Miss.1973); Mitchell v. Craft, 211 So.2d 509, 513 (Miss. 1968).
There is another major difference between the law of the forum and the State of Maryland. Maryland law caps noneconomic damages at $350,000.00. "In any action for damages for personal injury in which the cause of action arises on or after July 1, 1986, an award for noneconomic damages may not exceed $350,000." Md.Cts. & Jud. Proc. § 11-108(b). When the Maryland cap is applied to the jury's verdict for noneconomic damages[4] in the amount of $975,000.00 (65% of $1,500,000.00), the application results in a substantial reduction to the award in the amount of $625,000.00. ($975,000.00-$350,000.00). By contrast, Mississippi recognizes no statutory cap on damages, and plaintiff's recovery for her noneconomic losses under Mississippi law would be the full measure of $975,000.00. Therefore, application or non-application of the Maryland cap will have a substantial impact on the amount of judgment that this court will enter.
At the close of the trial after the jury's verdict was announced in open court, the undersigned invited briefs from the parties regarding the application of the Maryland cap to the judgment in this case. In response, the plaintiff has submitted a lengthy brief outlining her position on why the court should not apply the cap. The sum *792 and substance of her argument rests upon the same reasons which the court employed in rejecting the Maryland position on contributory negligence. That is, plaintiff makes a passionate argument that a statutory cap on damages is likewise offensive and repugnant to the public policy of this state. To support her argument, plaintiff calls the court's attention to the fact that caps on damages have been placed before the Mississippi Legislature for the past few years under the guise of "tort reform" in an effort to get a statutory cap similar to Maryland's on the books in Mississippi. The failure of efforts to pass a statutory cap in Mississippi is cited by plaintiff as an example of the express repudiation of statutory caps by the collective will of this state charged with the responsibility of determining public policy. Moreover, Mrs. Rieger submits that, if anything, support for statutory caps has eroded and lost favor in the Mississippi Legislature and that the best climate (political, business, judicial and otherwise) for such legislation has come and passed.
For additional support, plaintiff argues that caps infringe on the state constitutional right to trial by jury. See Miss. Const. Art. III, § 31. Plaintiff also directs the court's attention to Moore v. Mobile Infirmary Association, 592 So.2d 156 (Ala.1991), wherein the Alabama Supreme Court in the neighboring state held the Alabama cap on noneconomic damages unconstitutional based upon equal protection and trial by jury guarantees contained in the Alabama Constitution.
The arguments presented by Mrs. Rieger against application of the $350,000.00 Maryland cap are quite worthy of the court's careful consideration, and she can be assured that her points have received the same. However, the court concludes that the proper course would be to administer the cap to the verdict returned by the jury in this case. In concluding that the court should not apply pure contributory negligence principles to this case, the undersigned was guided by precedent with four decisions from the Mississippi Supreme Court which clearly dictated the path the court should take.[5] With regard to the statutory cap on noneconomic damages, the situation is much different. Mississippi has never had the opportunity to explore the constitutional or public policy ramifications of another jurisdiction's cap on damages. While that day may well present itself in the future, it has not occurred at this time.[6]
As a matter of routine, a federal district court exercises its Erie duty to apply the law of the state in which it sits if the courts or legislature of that state have ruled on an issue. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). At times, a federal district court is even called upon to interpret a first impression issue of state law, sometimes referred to as an Erie guess of state law. See Laws v. Aetna Finance Co., 667 F.Supp. 342 (N.D.Miss.1987). In the case at bar, the plaintiff is asking this court to Erie guess, or declare, that Mississippi would find statutory caps on damages offensive to the deeply ingrained and strongly felt public and social policy of this state. As explained in Boardman v. United Services Automobile Association, 470 So.2d 1024, 1038-39 (Miss.1985), this court should reject inconsistent legal principles from other jurisdictions which contravene public policy principles considered fundamental here.
Every choice of law problem, by definition, arises out of a situation where the substantive law of the competing state differs from that of this state. Because of this and because every law of this state presumably reflects the public policy of this state, we are caught in a Catch-22. The way out is *793 recognition that some of our laws reflect public policies which are more fundamental and more inviolable than others. Some of our laws reflect public policies more strongly felt and more deeply ingrained than others. For example, Mississippi's comparative negligence and intra-family tort immunity rules reflect long-standing public policies that may be said to be fundamental. Enforcement of the contrary rules proposed in Mitchell and McNeal [v. Administrator of Estate of McNeal, 254 So.2d 521 (Miss.1971)] would be offensive to our sense of justice.
As the court perceives this question, the burden is upon plaintiff to come forward with some tangible support that Mississippi would regard statutory caps on noneconomic damages offensive to our fundamental public policy priorities. In support of plaintiff's invitation for the court to find a fundamental public policy disdain for statutory caps on noneconomic damages, plaintiff offers the absence of a statutory cap in the Mississippi Code and a speculative conclusion that such inaction by the state legislature must indicate public repudiation for capping recovery. The plaintiff has not cited the court to any Mississippi case nor could the court find any commentary in the reported body of Mississippi case law which would suggest that statutory limits on noneconomic recovery collide with public policy priorities which we deem fundamental. Furthermore, as all are aware, no legislative history exists in this state which could shed some light on the subject.
At best, the means by which plaintiff reaches her conclusion is tenuous and highly speculative. She uses the absence of a statutory cap on noneconomic damages in Mississippi to prove an express, affirmative policy position of "fundamental" importance. The support which is offered provides too shaky a foundation to support a major pronouncement of public policy as "fundamental". See Boardman v. United Services Auto Ass'n, 470 So.2d 1024, 1038-39 (Miss.1985). Without more, this court is unwilling to conclude that Mississippi courts would find limits on noneconomic recovery in personal injury cases offensive and repugnant to fundamental public policy priorities. By application of the "center of gravity" test to the occurrences which form the basis of plaintiff's claim, deference is owed to the law of the State of Maryland as long as application of same does not run counter to the positive law of this state.
The jury's verdict for noneconomic damages was $975,000.00 (65% of 1,500,000.00). Since this amount exceeds the cap imposed by Md.Cts. & Jud.Proc. § 11-108(b), the amount of noneconomic damages will be reduced to $350,000.00.[7] The verdict for economic damages in the amount of $18,200.00 (65% of $28,000.00) will be added for a total judgment in the amount of $368,200.00.
NOTES
[1] Plaintiff has since moved from Mississippi and now resides in Pennsylvania.
[2] During the course of her care by Group Health, plaintiff had a positive hemocult test; she related an extensive history of colon cancer in her family; and, she complained of abdominal pain.
[3] The seminal case on this issue in this jurisdiction describes contributory negligence as harsh and punitive. Mitchell v. Craft, 211 So.2d 509, 513 (Miss.1968).
[4] Noneconomic damages include elements such as pain and suffering, inconvenience, physical impairment, disfigurement, loss of consortium and other nonpecuniary injury. United States v. Streidel, 329 Md. 533, 543, 620 A.2d 905, 911 (Md.Ct.App.1993); Murphy v. Edmonds, 325 Md. 342, 379, 601 A.2d 102, 120 (Md.Ct.App.1992); Md.Cts. & Jud.Proc. § 11-108(a)(1).
[5] See McDaniel v. Ritter, 556 So.2d 303, 316 (Miss.1989); Boardman v. United Services Automobile Association, 470 So.2d 1024, 1039 (Miss. 1985); Fells v. Bowman, 274 So.2d 109, 113 (Miss.1973); Mitchell v. Craft, 211 So.2d 509, 513 (Miss.1968); see also Price v. Litton Systems, Inc., 784 F.2d 600, 605 (5th Cir.1986) (Mississippi would apply Alabama's shorter statute of limitations in wrongful death claim); Dees v. Hallum, 721 F.Supp. 789 (N.D.Miss.1989) (Mississippi would apply California law on automobile insurance coverage).
[6] Mississippi is bordered by four states and choice of law questions are not uncommon in state trial court litigation. Sooner or later, the question is likely to be presented to the state supreme court.
[7] The Maryland statute merely caps recovery at $350,000.00. Md.Cts. and Jud.Proc. § 11-108. The cap is applied after the apportionment of fault. Under Mississippi law, the "apportioned" verdict would have been for $975,000.00. For a discussion of the procedural application of caps in apportioned liability situations, see General Electric Co. v. Niemet, 866 P.2d 1361 (Colo.Sup. Ct., 1994).