MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.
Before the court are various motions submitted by the defendants wherein they urge the court to dismiss plaintiffs claims against them pursuant to Rules 56,[1] 12(b)(1) and (b)(6),[2] Federal Rules of Civil Procedure. Charging that the defendants have violated the Age Discrimination in Employment Act (hereinafter “ADEA”), 29 U.S.C. § 621 et seq., the plaintiff invokes the jurisdiction of this court under 28 U.S.C. § 1331[3] and 29 U.S.C. § 216.[4]
Defendants’ Rule 56 motion attacks the entirety of plaintiffs ease. Plaintiff Darold L. Rutland, formerly a deputy general counsel with the Mississippi Department of Human Services (hereinafter “DHS”), contends that the defendants violated the ADEA when the Attorney General for the State of Mississippi refused to continue plaintiffs employment in the DHS legal department, after the Attorney General assumed responsibility for DHS’s legal services pursuant to a contract between the Attorney General and DHS. The defendants’ Rule 56 motion is predicated upon 29 U.S.C. § 630(f),[5] the personal staff *796 exemption of the ADEA. Specifically, defendants aver that attorneys employed by the Attorney General as Special Assistant Attorneys General (sometimes “Special Assistants”) fall within the purview of the exemption because they are personal staff members who make state legal policy and advise the Attorney General with respect to the exercise of the constitutional or legal powers of his office. Plaintiff opposes the motion and seeks a holding directly contrary to defendants’ urging, namely that the Special Assistants are not covered by the personal staff exemption. The court’s view of this debate favors the defendants. Hence, the court grants summary judgment to defendants, holding that the personal staff exemption found at 29 U.S.C. § 630(f) applies to Special Assistant Attorneys General for the State of Mississippi, and that, commensurately, plaintiff is precluded from furthering this lawsuit against the defendants under the ADEA. The court’s reasoning on this matter is set out in Part II of this opinion.
Separate and apart from defendants’ Rule 56 motion, individual defendants Robert Gibbs, Anne Sapp, and Beatrice Branch urge the court pursuant to Rules 12(b)(1) and (6) to dismiss all of plaintiffs claims against them on the ground that since these defendants never “employed” the plaintiff, these defendants are not “employers” within the meaning of the ADEA. Accordingly, say Gibbs, Sapp, and Branch, plaintiffs complaint against them is devoid of subject matter jurisdiction over them and, additionally, fails to state a cognizable claim. Notwithstanding plaintiffs protestations to the contrary, this court is persuaded by defendants’ argument and in Part III of this opinion explains why the court is granting defendants’ motion on this point as well.
The third motion before the court is a separate motion brought on behalf of the DHS under Rule 12(b)(6). DHS says that plaintiff has failed to state an actionable claim against it because DHS merely transferred plaintiff and six other members of DHS’ legal staff to the staff of the Attorney General pursuant to DHS/Attorney General contract for legal services executed by the two and that DHS had no role in plaintiffs termination. Impressed by DHS’ argument on the point, the court grants DHS’ motion and explains the basis for the ruling in Part IV of this opinion.

FACTS: PARTI

The pertinent facts of this dispute are easily discerned from the submitted affidavit of the Attorney General for the State of Mississippi, Mike Moore; the affidavit of Deputy Attorney General Robert Gibbs; and that of plaintiff, Darold L. Rutland. Basically congruent relative to the material background facts, the affidavits collectively tell the following story.
Plaintiff Darold L. Rutland, a member of the Mississippi State Bar, up until the time of the dispute which forms the basis of this lawsuit, had spent the vast majority of his legal career as an attorney for various agencies of the State of Mississippi. After private practice following law school, Rutland spent approximately seven (7) years with the Mississippi Department of Public Safety before his ambitious eye focused upon the Department of Public Welfare, as it was then known. Following his request for a transfer, in July of 1982, Rutland was offered a staff attorney position with the Department of Public Welfare in its legal division. Later, in January of 1988, Rutland was promoted to Deputy General Counsel for the Mississippi Department of Public Welfare, which subsequently was re-named the Mississippi Department of Human Services.
On August 10, 1989, DHS entered into a contract with the Office of the Attorney General for that office to afford DHS day-to-day legal services. The inter-agency contract was signed by Mike Moore, Attorney General, and John Cook, Deputy Director for Programs with DHS. The terms of the contract stated that its period of performance was to begin on July 1,1989, and to end on June 30, 1990. As consideration for the performance of the contract, DHS agreed to pay to the Office of the Attorney General (referred to as “OAG”) the sum of $571,924.43. Provisions *797 of the contract pertinent to this litigation are set out below:
A. Statement of Work
1. ...
2. Services
a. This contract includes a number of attorneys, specified below, on the OAG staff who shall work under the direction and supervision of the Attorney General, and at the will and pleasure of the Attorney General, (emphasis added) Department of Human Services
There will be eleven attorneys employed by OAG pursuant to this Contract. As specified below, three (8) attorneys will be assigned to the Division of Vocational Rehabilitative Services and one (1) attorney will be assigned to the Division of Vocational Rehabilitation for the Blind. The remaining attorneys will be assigned to DHS as a whole. The attorneys’ day-to-day activities will be directed by a section head who will be appointed by the Attorney General, (emphasis added)
C. Consideration and Payment
1. ...
2. Personnel
a. The Attorney General, as Chief Legal Officer for the State of Mississippi, will secure at his office expense, all personnel required in performing this Contract. Such personnel shall not be employees of or have any other contractual relationship with DHS. (emphasis added)
D. Termination of Contract
1. Termination by OAG
a. The OAG may terminate participation in this Contract by notifying DHS in writing, to be received by DHS at least 80 days in advance of the proposed termination date.
2. Termination by DHS
b. DHS may terminate participation in this Contract by giving OAG’30 days advance written notice in the event of termination by DHS of nonperformance of the terms of this Contract by OAG. DHS, before issuing written notice of termination, shall allow OAG a reasonable opportunity to correct the nonperformance. If DHS makes the determination that this Contract should be terminated due to, (1) insufficient performance, or (2) a violation of any section of this Contract, then it is agreed that the Contract shall be terminated upon 30 days notice in writing from DHS to OAG.
F. Non-Discrimination Clause
1. Mississippi Vocational Rehabilitation for the Blind does not discriminate on the basis of race, color, religion, national origin, sex, age, handicap or Vietnam-era veteran status. In conformity with Title VI of the Civil Rights Act of 1964; Title IX of the Education Amendments of 1972; Section 504 of the Rehabilitation Act of 1973, as amended; and related Federal and State law, the Personnel Officer located at the State Office at 5455 Executive Place, P. 0. Box 4872, Jackson, Mississippi .39396-4872, (601) 354-6411, has been designated as the responsible employee to coordinate efforts to carry out responsibilities and make investigations of complaints relating to discrimination.
In consonance with the inter-agency contract, the Attorney General created a Human Services Section within his office, designated seven slots for attorneys and placed the fledgling division under Deputy Attorney General Robert L. Gibbs.
Gibbs’ first chore was to recommend to the Attorney General seven attorneys who would fill the waiting slots in the Human Services Section. He began by interviewing the attorneys, plaintiff included, who had comprised DHS’ legal department before the execution of the inter-agency contract.
Before the effective date of the inter-agency contract, DHS had seven lawyers on its legal staff. According to plaintiff, at the time of the transfer, all of the DHS attorneys, except plaintiff, were under the age of forty (40). Plaintiff was fifty-six (56) years old as of August 10, 1989.
Gibbs recommended the appointment of one James Graves as section head. Graves had been on the Attorney General’s staff since November 1986. In his affidavit, Gibbs *798 testified that it was his opinion that the Human Services Section would function best if an incumbent member of the Attorney General’s Office was appointed as section head. The Attorney General approved Gibbs’ recommendation.
Gibbs next recommended the hiring of six of the seven attorneys who previously had served in the DHS legal department. The lone attorney not recommended by Gibbs was the plaintiff, Darold Rutland.
Gibbs denies that plaintiffs age figured into his decision. Instead, says Gibbs, after an interview with Rutland, he opined that Rutland simply “would not be a suitable Special Assistant Attorney General and would not fit into the Attorney General’s plans for the Human Services Section.” The Attorney General approved Gibbs’ recommendation to hire all of the former DHS legal staff except plaintiff. The Attorney General, as does Gibbs, denies that plaintiff’s age was any factor whatsoever in his decision not to employ plaintiff.

PART II

Charging that his age was a factor in his non-selection, plaintiff has named as defendants the Office of the Attorney General, State of Mississippi; Mike Moore, as Attorney General of the State of Mississippi; Robert Gibbs, as Deputy Attorney General of the State of Mississippi; Mississippi Department of Human Services (DHS); Anne Sapp, as Interim Director of the Mississippi Department of Human Services; and Beatrice Branch, as Executive Director of the Mississippi Department of Human Services. According to plaintiff, each and all of the defendants are liable to plaintiff for having violated the sainted strictures of the ADEA.
Enacted by Congress in 1967, the ADEA codifies the nation’s repugnance for discrimination in employment against our older citizens. E.E.O.C. v. Chrysler Corp., 759 F.2d 1523, 1524 (11th Cir.1985), citing Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 119, 105 S.Ct. 613, 621, 83 L.Ed.2d 523 (1985). Mindful that if allowed to persist unchecked any such discrimination would occasion deleterious consequences to the psyche of older workers, to the productivity of the work force as a whole, and to the principles of an enlightened nation, Congress outlawed employment discrimination against workers between the ages of forty (40) and seventy (70) and provided stiff civil penalties for those who would dare transgress this law.
The plaintiff has the ultimate burden of persuasion throughout the case, and, initially, the burden of establishing a prima facie case in order to shelter the claim from the clutches of a defendants’ motions to dismiss or, alternatively, for summary judgment. In .order to establish a prima facie case, the plaintiff must show that he:
(1) is between forty and seventy years of age;
(2) is qualified to do the work;
(3) is a victim of adverse personnel action; and
(4) was replaced or that the employer sought a replacement by someone not in the protected class.
Rollins v. TechSouth, Inc., 833 F.2d 1525 (11th Cir.1987); Pruet Prod. Co. v. Ayles, 784 F.2d 1275 (5th Cir.1986); Thornbrough v. Columbus & Greenville R.R. Co., 760 F.2d 633, 639 (5th Cir.1985). The defendant must respond with non-discriminatory reasons for taking such action against the plaintiff. Thereafter, the plaintiff must show that defendant’s offered reasons are merely pretex-tual and that a discriminatory reason (age) more than likely underlies the actions taken by the defendant. Harpring v. Continental Oil Co., 628 F.2d 406, 409 (5th Cir.1980), cert. denied, 454 U.S. 819, 102 S.Ct. 100, 70 L.Ed.2d 90 (1981). As in a Title VII case, the plaintiff has the burden of proof on all elements of an age discrimination cause of action. Powell v. Rockwell Int’l Corp., 788 F.2d 279 (5th Cir.1986). See also Laurence v. Chevron, U.S.A., 885 F.2d 280 (5th Cir. 1989) (holding that plaintiff bears burden of production as well as persuasion). To ultimately prevail on an age discrimination claim, plaintiff must prove his case by a preponderance of evidence. Harpring, 628 F.2d at 409. So, here, in order to shoulder his proof burden, plaintiff must show that he squeezes into the embrace of the above proof syndrome.
*799 Defendants say plaintiff cannot do so because the strictures of the ADEA do not apply here. Defendants assert that plaintiffs claim is subsumed and vitiated by the “personal staff exemption,” found at 29 U.S.C. § 630(f), which defines “employee” as:
an individual employed by any employer except that the term “employee” shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer’s personal staff, or an appointee on the policymaking level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency, or political subdivision.
29 U.S.C. § 630(f). Defendants argue that the position of Special Assistant Attorney General clearly falls under this exemption.
The two premier cases which have guided this court’s analysis of the issue sub judice are E.E.O.C. v. Reno, 758 F.2d 581 (11th Cir.1985); and Teneyuca v. Bexar County, 767 F.2d 148 (5th Cir.1985).
In Reno, the EEOC alleged that defendant Janet Reno, now Attorney General of the United States, violated the ADEA by refusing to hire one William Frieder as an assistant state attorney because of his age. The complaint also alleged that the defendant “utilized employment selection techniques and criteria that have a foreseeable and demonstrated adverse effect on the employment opportunities of applicants in the protected age group (40-70).” The defendant moved for dismissal or summary judgment pursuant to § 630(f) and in support of that motion attached copies of Florida state statutes which provide, inter alia, that (1) the state attorney is an elected official; (2) that assistant state attorneys serve at the pleasure of the appointing state attorney; (3) that each state attorney is given complete discretion to determine the need for and to employ all assistant state attorneys; and (4) that the state attorney and all her employees are exempted from the provisions of Florida’s career service system.
The district court concluded that the defendant did not ■ employ any “employees” within the meaning of Title 29 U.S.C. § 630(f) and that the district court lacked jurisdiction over the matter. The Eleventh Circuit disagreed, finding that the district court’s conclusion swept too broadly and would include secretaries, investigators, and other employees who were not assistant state attorneys. Nevertheless, the Eleventh Circuit upheld the district court’s conclusion that the assistant state attorney position at issue fell within the federally prescribed personal staff exemption of the ADEA. The nature of the position, opined the Court, which invests the assistant state attorney with practically all of the duties, responsibilities, and discretions of the state attorney, is such that the appointing state attorney must place a significant degree of trust in her assistants. The assistant state attorneys, notéd the Eleventh Circuit, are given powers and responsibilities virtually co-extensive with those of the appointing state attorney. Thus, said the Court, to insure that these powers and responsibilities are fully carried out, the assistant state attorneys for the State of Florida serve at the pleasure of the appointing state attorney. As a matter of Federal assessment, the Eleventh Circuit concluded, the position, as ordained by Florida statutes, is clearly one of policy-making level, involving one who necessarily advises, and acts upon, the exercise of constitutional and legal powers of the office of the state attorney. The Eleventh Circuit then affirmed the district court’s dismissal of the plaintiffs claim.
In Teneyuca, the plaintiff, who unsuccessfully applied to defendant for a position as a county assistant district attorney sued defendants on the grounds of sex discrimination under Title VII, 42 U.S.C. § 2000e et seq. Defendants filed a motion to dismiss or, in the alternative, a motion for summary judgment asserting that they were entitled to dismissal under the personal staff exception, 42 U.S.C. § 2000e(f).[6] The trial court grant *800 ed summary judgment. Upon reviewing the matter, the Fifth Circuit Court of Appeals isolated a number of factors which courts had found significant in determining whether a complaint falls within this exception:
(1) whether the elected official has plenary powers of appointment and removal, (2) whether the person in the position at issue is personally accountable to only that elected official, (3) whether the person in the position at issue represents the elected official in the eyes of the public, (4) whether the elected official exercises a considerable amount of control over the position, (5) the level of the position within the organization’s chain of command, and (6) the actual intimacy of the working relationship between the elected official and the person filling the position.
Teneyuca, 767 F.2d at 151.
Upon applying the above factors to the evidence in that case, especially the provisions of the Texas Civil Statutes which describe the duties and character of the office in question there, the Fifth Circuit affirmed the district court.
This court is certainly mindful that oftentimes “the highly factual nature of the inquiry necessary to the determination of the ‘personal staff exception does not lend itself well to disposition by summary judgment.” Teneyuca, 767 F.2d at 152; however, this is not a rigid rule. Yet, the Court in Teneyuca itself affirmed the district court’s grant of summary judgment because it found in part that several of the factors bearing on the applicability of the exception could be determined from an examination of the relevant state statutes.
Having now identified the guiding stars in the Teneyuca constellation of factors, this court analyzes them under the undisputed facts to discern if summary judgment is here appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (summary judgment not to be granted unless court’s decision premised on undisputed facts); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (“[a] judge’s function at the summary judgment stage is not himself to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial”); Dugas v. Travelers Ins. Co., 785 F.2d 550 (5th Cir.1986) (summary judgment may only be granted if the record clearly shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law); Anthony v. Petroleum Helicopters, Inc., 693 F.2d 495, 496 (5th Cir.1982) (“[i]f reasonable minds might differ on the resolution of any material fact or even the inferences arising from undisputed facts, summary judgment must be denied”).
1. Whether the elected official has plenary powers of appointment and removal
There can be no doubt that the first Ten-eyuca factor has been satisfied here. The Attorney General is an elected official. Miss. Code Ann. § 7-5-1 (1972). He is the chief legal officer and advisor of the state in both civil and criminal matters and is charged with managing all litigation on behalf of the state. Id.
The Attorney General has plenary powers of appointment and removal of Special Assistant Attorneys General pursuant to Miss. Code Ann. § 7-5-5 (1972), which provides that “[t]he Attorney General may discharge any ... special assistant attorney general at his pleasure and appoint another in his stead.”
2. Whether the person in the position at issue is personally accountable to only that elected official
Section 7-5-5 provides that Special Assistant Attorneys General serve at the “will and pleasure”[7] of the Attorney General and “shall devote their entire time and attention to the duties pertaining to the department of justice under the control and super *801 vision of the Attorney General.” Miss.Code Ann. § 7-5-5. Moreover, the Attorney General alone determines the salary levels of the Special Assistant Attorneys General. Miss. Code Ann. §§ 7-5-5 and 7-5-7. From this, it is clear that Special Assistant Attorneys General are ultimately, solely accountable to Mike Moore, as chief legal officer of the state.
3. Whether the person in the position at issue represents the elected official in the eyes of the public
Section 7-5-5 empowers the Attorney General to employ Special Assistant Attorneys General, inter alia, “to perform any of the Attorney General’s powers and duties.” Accordingly, Special Assistants represent the Attorney General at administrative hearings and at meetings of state boards, agencies and commissions. Undoubtedly, then, Special Assistants act as representatives of the Attorney General in the eyes of the courts, see Miss.Code Ann. § 7-5-29, the legislative and executive branches, and a host of administrative agencies, state officials, and the general public. See Miss.Code Ann. § 7-5-25.
4. Whether the elected official exercises a considerable amount of control over the position
By statute, all attorneys employed by the Attorney General serve “under the control and supervision of the Attorney General.” Miss.Code Ann. 7-5-5. This amply demonstrates that Special Assistants are under the considerable control of the Attorney General.
5. The level of the position within the organization’s chain of command
AND
6. The actual intimacy of the working relationship between the elected official and the person filling the position
These two factors are here interrelated and will be discussed together.
Had he been retained, plaintiff would have had two superiors between him and the Attorney General. However, according to the Attorney General’s affidavit, which is unchallenged on these particulars, direct reporting by Special Assistant Attorneys General to the Attorney General is a common occurrence, owing to the nature and sensitivity of various lawsuits, board hearings, and projects of particular public significance.
Since Rutland was not selected to be on Attorney General Moore’s staff, he obviously did not have the opportunity to develop a close working relationship with the Attorney General and contends that Special Assistants are outside the exemption because they lack the level of authority and working relationship of Deputy and Assistant Attorneys General. However, the focus of this court’s analysis is on the statutory authority of Special Assistants and the confidential nature of the legal work Special Assistant Attorneys General perform.
One case to which this court has looked for guidance is Monce v. City of San Diego, 895 F.2d 560 (9th Cir.1990), which featured the issue therein of whether a deputy city attorney was within the personal staff exemption. The attorney was a trial deputy, characterized by the Court as one of the “lowest positions” in the office, with “very little individual authority.” After an analysis of the statutory treatment of the position, the Ninth Circuit held the position exempt, reasoning as follows:
In addition, this “level of personal accountability is consistent with the highly sensitive and confidential nature of the work which deputies perform as well as the considerable powers of the deputy to represent ... [City Attorney] in legal proceedings and in the eyes of the public.” ... Although Monee did not have an immediate personal relationship ivith the City *802 Attorney and was not personally entrusted with a great deal of responsibility, as a deputy city attorney he was placed in the public eye as a representative of the City Attorney’s Office and was empowered to exercise the legal authority of that office. The personal staff exception applies to this situation.
895 F.2d at 561 (emphasis supplied).
As noted, the statute exempts those persons who are immediate advisors with respect to the legal and constitutional powers of the Office in issue. Special Assistants are expected to advise the Attorney General directly on the legal and constitutional powers of the Office, and, indeed, perform the Attorney General’s powers and duties as directed by the Attorney General. Due to the nature of the profession and the Attorney General’s status as chief legal officer and advisor, Special Assistant Attorneys General make, or participate in the making of, legal policy for the State of Mississippi on a daily basis through formal opinions, in litigation matters, and in advising State officers and administrative agencies.
Finally, it should be pointed out that Congress, in accordance with the court decisions in Teneyuca and Reno, also has provided guidance on the meaning of the personal staff exemption by expressly stating in the statute that:
The exemption [for personal staff] set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency, or political subdivision.
Id. at 561. Apparently, this exemption excluding civil service employers from the personal staff exemption emphasizes Congress’ intent to distinguish between “rank-and-file” governmental employees who should be subject to the ADEA, and personal staff-type positions, the occupants of which serve at the pleasure of their elected supervisor. Special Assistants are not included within the coverage of Mississippi’s Civil Service Law, see Miss.Code Ann. § 25—9—107(e)(xiii) (Supp. 1990), and, as previously pointed out, serve at the discretionary will and pleasure of the Attorney General.
In view of the statutory scheme governing the powers of the Office of the Attorney General and the organizational and operational structure of the incumbent, this court is satisfied that the personal staff exemption applies to the position of Special Assistant Attorney General.' Each of the Teneyuca factors is found here under the undisputed facts supplied by applicable Mississippi statutory law and unchallenged particulars of the affidavit of the State Attorney General. Summary judgment for the defendants is appropriate. Accordingly, this court holds that Rutland was not and, had he been employed, would not have been, an employee within the meaning of the ADEA. Thus, this cause should, and must, be dismissed.

PART III

The separate motion to dismiss of the defendants Gibbs, Sapp, and Branch maintains that these three are not employers as contemplated under 29 U.S.C. § 680(b) which defines an “employer” as “a person engaged in an industry affecting commerce who has twenty or more employees ... and any agent of such a person, and the State or any political subdivision of a State and any agency or instrumentality of a State and any interstate agency_” This court agrees. The term employer includes states and state agencies, but not agents of such entities. See Sagarino v. Town of Danvers, 750 F.Supp. 51 (D.Mass.1990); Ditch v. Board of County Comm'rs, 650 F.Supp. 1245 (D.Kan.1986), modified on other grounds, 669 F.Supp. 1553 (D.Kan.1987). In Sagarino, the district court discussed the definition of the term “employer” under ADEA as follows:
In enacting the ADEA, Congress explicitly excluded states and their political subdivisions from the definition of person, opting rather to include them as a separate and distinct category of employer. Within one sentence, Congress established the separate and distinct liability of (1) agents of persons and (2) states and political subdivisions. Congress made no provision for agents of states and political subdivisions. It would have only required the insertion of the short phrase “and their agents” in 29 U.S.C. § 630(b)(2) to express Congress’ intent to hold individuals such as these *803 defendants liable for age discrimination. If ever the maxim expressio unius est exclusio alterius[8] is applicable, it is this situation.
Id. at 52.
In Swanson v. Department of Health, 773 F.Supp. 255 (D.Colo.1991), the district court found that Congress intended for states to be liable to private plaintiffs for ADEA violations inasmuch as the ADEA defines the term “employer” (the class of potential defendants in age discrimination cases) to include a .“State or political subdivision of a state.” 29 U.S.C. § 630(b). The district court also concluded that, inasmuch as § 630(b) refers to agents of “persons,” but does not refer to agents of a State or instrumentality, agents of a State or instrumentality thereof are not included within the class of potential defendants.
Other courts have reached similar holdings. In Price v. County of Erie, 654 F.Supp. 1206, 1207 (W.D.N.Y.1987), that Court held that agents of a state’s instru-mentalities were not “employers” within the contours of ADEA and, thus, could not be sued individually. Similarly, in Young v. Sedgwick County, Kan., 660 F.Supp. 918, 929 (D.Kan.1987), the Court concluded that a county administrator, an agent of a political subdivision of the state, was not an “employer” subject to personal liability under the ADEA. Then, in Ditch v. Board of County Comm’rs, supra, the Court held that individual county commissioners were not subject to liability under ADEA because the commissioners did not fit within the statutory definition of “employers” under ADEA despite the fact that they would fit the definition of “employer” for purposes of Title VII litigation. See Ditch, 650 F.Supp. at 1251-52.
The court’s own analysis of 29 U.S.C. § 630(b) and the reasoning of the above authorities persuade this court that the three defendants Gibbs, Sapp, and Branch were not employers within the meaning of ADEA.

PART TV

Plaintiff includes DHS in this action as a defendant solely because DHS transferred Rutland and six other members of the DHS legal staff to the staff of the Attorney General. Of the seven transferred, five were under forty and two were not. DHS had no role in Rutland’s termination, which is the subject of this suit. Aff. R. Gibbs. Rutland offers no competent proof to refute this assertion. Moreover, Rutland does not, nor could he, contend that his transfer by DHS was discriminatory. Thus, this court concludes that plaintiff has shown no acts or conduct by DHS which would expose DHS to any liability under any of plaintiffs causes of action.

CONCLUSION

The court hereby grants summary judgment under Rule 56 in favor of all defendants. This court is persuaded by the undisputed facts and applicable law that 29 U.S.C. § 630(f) here applies to bar this cause of action. Plaintiff Darold L. Rutland’s employment and duties as a Special Assistant Attorney General fell squarely within the “personal staff exemption” of the ADEA described by § 630(f).
Further, and alternatively, this court hereby dismisses this cause of action against defendants Gibbs, Sapp, and Branch on the ground that they were not employers within the meaning of § 630(b) of the ADEA.
Finally, and alternatively, this court hereby dismisses this cause of action against DHS on the ground that plaintiff has failed to state an actionable claim against defendant DHS.
The court will enter a separate judgment in accordance with the local rules. Plaintiff is to bear the costs of this lawsuit.
SO ORDERED AND ADJUDGED.

. Rule 56(b) of the Federal Rules of Civil Procedure provides:
(b) For Defending Party. A party against whom a claim, counterclaim or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

. Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure provides as follows:
(b) How Presented. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, ... (6) failure to state a claim upon which relief can be granted,....

. Title 28 U.S.C. § 1331 provides as follows:
The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

. Title 29 U.S.C. § 216(b) provides as follows:
(b) Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation ... Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title ... An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.

. Title 29 U.S.C. § 630(f) provides as follows:
(f) The term "employee” means any individual employed by any employer except that the term "employee” shall not include any person elected to public office in any State or political division of any State by the qualified voters thereof, or any person chosen by such officer *796 to be on such officer's personal staff, or an appointee on the policymaking level....

. The personal staff exception of the ADEA is based upon identical language in section *800 2000e(f). E.E.O.C. v. Reno, 758 F.2d at 584 n. 7. Indeed, the courts have construed Title VII and ADEA consistently; cases arising under each are frequently applied to the other. See Oscar Mayer & Co. v. Evans, 441 U.S. 750, 756, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609, 615 n. 10 (1979) (citing cases).

. The term "will and pleasure” is generally defined to mean that an employee may be removed at the caprice of the appointing official, without *801 hearing or notice. The term "will and pleasure” has also been read as conferring unfettered discretion of the appointing official to discharge an employee. 63A Am.Jur.2d Public Officers and Employees § 223. See e.g., Irby v. Sullivan, 737 F.2d 1418, 1422 (5th Cir.1984) (interpreting the term “pleasure,” under Texas statute regarding authority of sheriffs, to mean that elected official may fire employees for no articulable reason at all and that employees would have no liberty interest in employment); Glover v. City of Columbus, 197 Miss. 467, 19 So.2d 756 (1944) (discussing the discretionary removal authority of employees by a public official).

. Latin scholars translate this phrase as, "The expression of one thing is the exclusion of another.” An alternative translation is “The express mention of one thing (person or place) implies the exclusion of another."